## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Baltimore Division)

**MARK SHASTI,**
5105-L Backlick Road
Annandale, VA 22003

   *Plaintiff*,

**v.**             **Case No.:** _____

**MICHAEL ROSNER**
227 Kings Drive
Westminster, MD 21157

   *Defendant.*

### <u>COMPLAINT</u>

Plaintiff Dr. Mark Shasti ("*Dr. Shasti*"), by and through undersigned counsel, brings this action against Defendant Michael Rosner ("*Rosner*" or "*Defendant*") based on the facts that follow:

### <u>Nature of the Action</u>

1. Dr. Shasti brings this defamation suit to address the proliferation of a false and defamatory rumor which has affected the economics of his surgical practice and limited his opportunity to assist patients presenting as complex spine surgical cases. Rosner defamed Dr. Shasti falsely claiming that Dr. Shasti's former employer, Inova Health Care Services ("*Inova*"), terminated Dr. Shasti because he performed unnecessary spinal surgeries on his patients.

2. The defamatory statement is unequivocally false. Dr. Shasti was not terminated by Inova for performing contraindicated surgeries or for any other reason. Dr. Shasti files this suit to seek redress for the reputational damages he suffered and will continue to suffer because of Rosner's false statement.

1

**Parties, Jurisdiction, and Venue**

3.      Dr. Shasti is an adult resident of Fairfax County, Virginia.

4.      On information and belief, Mark Rosner is an adult resident of Carroll County, Maryland. Rosner resides at 227 Kings Drive, Westminster, Maryland 21157.

5.      Diversity jurisdiction exists under 28 U.S.C. § 1332 because complete diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000.00.

6.      Personal jurisdiction exists over Defendant as a citizen of Maryland.

7.      Venue is proper in the District of Maryland because the defamatory language was published and consumed, *inter alia*, in in the District of Maryland.

**Statement of Facts**

8.      All previous paragraphs of this Complaint are realleged and incorporated herein by reference.

9.      Dr. Shasti is a board-certified physician who presently serves as the Director of Nova Spine Center. Dr. Shasti has fellowship training in advanced spine surgery intended to correct spinal pathologies, including cervical and lumbar degenerative diseases, adult and pediatric scoliosis, infection, trauma, and tumors. Dr. Shasti's specialty lies in spinal surgery featuring complex procedures, such as cervical disc arthroplasty and minimally invasive lumbar surgeries.

10.      Since completing his fellowship in August 2019, Dr. Shasti has developed an excellent professional reputation for specialized expertise and diligence in performing advanced spinal surgeries. Dr. Shasti maintains patient health records which reflect the volume of his surgical practice and the nature of the procedures he performs. This information is included in a larger data package for patient outcome tracking that is maintained by the institutions where Dr. Shasti has been extended privileges to perform surgery, including Inova and Nova Spine Center.

11. The volume of a surgeon's practice is one of several important indicators of the breadth and demand for their expertise and the currentness of their surgical skills; consequently, surgical practice volume is also an indicator used by prospective employers or partners in evaluating the market value of a surgeon's expertise. Positive trends in surgical volume generally represent growth trajectories for a surgeon's abilities and his or her market value to a hospital system or private practice. Negative volume trends are generally perceived as indicating negative career trajectories, regardless of a surgeon's reasons for reduced surgical volume.

12. For the calendar years 2020, 2021, and 2022, Dr. Shasti consistently performed between 270-300 spinal surgeries per year. These figures reflected Dr. Shasti's dedication to a full-time surgical practice, the breadth of his surgical expertise, and the demand for his work based on his specialized education, training, and experience. Dr. Shasti's surgical volume was representative of a surgeon on pace to perform near the top of his or her field within a highly valued practice area. The market for Dr. Shasti's surgical expertise was strong in 2020 and grew over the next two years.

13. During the first three months of 2023, Dr. Shasti performed spinal surgeries at a rate which was consistent with his rate of surgery performed from 2020-2022.

14. On March 23, 2023, Inova advised Dr. Shasti that his contract was being terminated without cause and that his employment would end as of June 21, 2023. Soon thereafter, Dr. Shasti decided to launch a private medical practice focused on delivery of advanced spinal surgery to patients as of July 1, 2023. From July 2023 to December 2023, Dr. Shasti performed 74 surgical procedures, which represented an annualized pace of approximately 150 cases per year.

15. From January 2024 to December 2024, Dr. Shasti performed 171 surgical procedures, representing approximately a 15% increase over his annualized pace from the second half of 2023.

16.    Dr. Shasti's surgical case volume for 2025 is set out in the table below:

| 2025 Surgical Volume | | | |
|---|---|---|---|
| **Month** | **Unique Cases** | **Cumulative Cases** | **YTD Annualized Cases** |
| January | 12 | 12 | 144.0 |
| February | 10 | 22 | 132.0 |
| March | 15 | 37 | 148.0 |
| April | 9 | 46 | 138.0 |
| May | 16 | 62 | 148.8 |
| June | 15 | 77 | 154.0 |
| July | 7 | 84 | 144.0 |
| August | 11 | 95 | 142.5 |
| September | 15 | 110 | 146.7 |
| October | 6 | 116 | 139.2 |
| November | 9 | 125 | 136.4 |
| December | 23 | 148 | 148.0 |

17.    The pace of Dr. Shasti's surgical volume has decreased since approximately February 2025, when he learned that a specious medical malpractice case had been filed against him.[1] Upon receiving the complaint filed in *Tilton v. Shasti* (the "*Tilton Complaint*"), Dr. Shasti learned that at least one other surgeon practicing in his field held the false belief that Inova had fired Dr. Shasti.[2] Dr. Shasti's discovery of this false rumor explained his observed decrease in surgical volume despite growing his skills and experience in advanced spinal surgeries since June 2023, when his employment ended with Inova.

18.    The Tilton Complaint referenced the false rumor that Dr. Shasti was fired from Inova, but the pleading did not provide the rumor's source. Even after reading the Tilton Complaint, Dr. Shasti remained unaware of Rosner's role in publishing the defamatory statement during the early stages of the Tilton litigation.

---

[1] *Tilton v. Shasti*, Case No. CL24-5694-00, Loudon County Cir. Ct. (filed October 3, 2024).
[2] *See* Compl. in *Tilton v. Shasti*, ¶ 22 ("Upon information and belief, Inova terminated Dr. Shasti's employment because he performed [Tilton's] surgery and other large surgeries that were not indicated by his patients' presentation.").

4

19.    From the time Dr. Shasti was served with the Tilton Complaint until April 25, 2025, his counsel diligently pursued the factual basis for the rumor contained in Paragraph 22 of the Tilton Complaint. As part of this process, Dr. Shasti's counsel issued discovery, met and conferred with Tilton's counsel seeking to resolve his deficient discovery responses, and moved to compel more fulsome answers concerning the factual support for the false claim about the reason and circumstances of Dr. Shasti's employment ending with Inova.

20.    Despite these sustained efforts, Tilton's counsel did not disclose the source of the false rumor until on April 8, 2025. On that date, Dr. Shasti received Tilton's Second Supplemental Interrogatory Answers, which explained that Dr. MarieElaina Sumas, the certifying doctor in Tilton's Virginia medical malpractice case and a testifying expert,[3] was told by Michael Rosner that Inova had terminated Dr. Shasti for performing unindicated surgeries. On that date, Dr. Shasti first learned of Rosner's role in the proliferation of the rumor.

21.    Rosner published a false and defamatory statement to Dr. Sumas between March 1, 2023, and October 6, 2024, which included the claim that Dr. Shasti had been terminated by Inova for performing unnecessary surgeries.

22.    Under Maryland law, the statute of limitations for a defamation claim is one (1) year from the date the claim accrues.[4] "Accrual occurs either the day of publication, or, under the discovery rule, 'when the plaintiff in fact knew or should have known' of the statement."[5] The 'discovery rule' applies to defamation claims in Maryland.[6]

---

[3] *See* Va. Code § 8.01-20.1 (requiring a certifying expert at the time of serving a case relying on most theories of liability of medical malpractice).
[4] Md. Code Ann., Cts. and Jud. Proc. § 5-105.
[5] *McClure v. Lovelace*, 214 Md. App. 716, 741 (2013), *quoting Poffenberger v. Risser*, 290 Md. 631, 636 (1981).
[6] *Sears, Roebuck and Co. v. Ulman*, 287 Md. 397 (1980).

23.    Dr. Shasti learned of Rosner's defamatory statement on April 8, 2025, and thus the claim accrued on that date. His suit is brought within one year of April 8, 2025, and is timely filed.

24.    Rosner's statement to Dr. Sumas that Dr. Shasti was terminated for performing unindicated surgeries carries the false and defamatory implication that Dr. Shasti was terminated for cause. Dr. Shasti was not terminated for cause, and his correspondence with Inova relating to his employment ending confirms that fact.

25.    Rosner published the defamatory statement with negligence. On information and belief, no person in a position of credibility or authority provided reliable information to Rosner which supported the false and defamatory statement he published attributing Dr. Shasti's separation from Inova to performing unnecessary or contraindicated spinal surgeries.

26.    Rosner's false statement damaged Dr. Shasti's reputation in and around Maryland and Virginia, and particularly among the small community of surgeons performing advanced spinal surgery in those states. As a result of Rosner's statement, Dr. Shasti's professional competence has been called into question, and his surgical case volume, particularly of advanced spinal cases, has markedly decreased.

27.    Rosner's statement imputed to Dr. Shasti conduct which would affect him in the practice of his business or trade, and so was defamatory *per se*. An allegation that a surgeon performs medical procedures on patients which are not intended to benefit them reflects negatively on the surgeon's fitness to practice medicine, and would disqualify the surgeon from practicing medicine, if true.[7]

---

[7] *See Shapiro v. Massengill*, 105 Md. App. 743, 775 (1995), *quoting Leese v. Baltimore Co.*, 64 Md. App. 442, 473-74 (1985).

## COUNT I – Defamation

28.    All previous paragraphs of this Complaint are realleged and incorporated herein by reference.

29.    Rosner's statement regarding the end of Dr. Shasti's employment with Inova was of and concerning Dr. Shasti; was defamatory *per se*; and was published with negligence.

30.    Rosner either knew the statements he published regarding Dr. Shasti were false, or, believing them to be true, lacked reasonable grounds for such belief and/or acted negligently in failing to ascertain the facts on which his statements relied, and therefore was negligent in publishing those statements of and concerning Dr. Shasti.

31.    Rosner's false and defamatory statement created and made apparent to Rosner a substantial danger to Dr. Shasti's reputation and medical career.

## Damages and Prayer for Relief

32.    All previous paragraphs are realleged and incorporated by reference.

33.    The defamatory statement sued upon is of and concerning Dr. Shasti.

34.    Rosner's defamatory statement made apparent to him a substantial danger of injury to Dr. Shasti's reputation because the statement alleged a lack of integrity and conduct which would tend to injure Dr. Shasti in the performance of his profession or trade, which is advanced spinal surgery.

35.    Rosner's defamatory statement would tend to so harm the reputation of Dr. Shasti as to lower Dr. Shasti in the estimation of the community or to deter third persons from associating or dealing with him.

36.    As a direct and proximate result of Rosner's defamation of him, Dr. Shasti has suffered actual damages, including, but not limited to, impairment of reputation, diminished

7

standing in the community, humiliation, injury and embarrassment, emotional distress, mental anguish, lost business opportunities, and has been otherwise damaged.

37.     Dr. Shasti is entitled to presumed damages because Rosner's false and defamatory statement imputes acts which would render him unfit to practice medicine.

**WHEREFORE**, Plaintiff moves this Court for the entry of judgment against Defendant in the following amounts:

(1) Trial by Jury;

(2) One Million, Five Hundred Thousand Dollars ($1,500,000.00) for presumed damages, compensatory damages, actual damages for harm and injury to reputation, and for all other damages alleged in this Complaint;

(3) Pre- and post-judgment interest; and

(4) such other and further relief as the Court deems just and appropriate.

**Respectfully submitted,**

**MARK SHASTI**

*By Counsel*

Jason W. Fernandez (Bar # 29069)
Greenberg & Bederman, LLC
1111 Bonifant Street
Silver Spring, Maryland 20910
Tel:    (866) 589-8547
Fax:    (240) 630-3553
jfernandez@gblawyers.com

Evan D. Mayo (*pro hac vice forthcoming*)
Payal C. Sampat (*pro hac vice forthcoming*)
Mayo Law Group PLLC
425 Locust Avenue, Suite 201

Charlottesville, Virginia 22902
Telephone:      (434) 951-2222
Facsimile:      (434) 951-0666
evan@mayolawgroup.com
payal@mayolawgroup.com