# Exhibit A

**VIRGINIA:**

## IN THE CIRCUIT COURT FOR LOUDOUN COUNTY

DOE, Jane,

       Plaintiff,

v.

                                           Case No. **CL 22-566**

SHASTI, Mark, MD
Serve at:
47818 Blockhouse Point Pl.
Sterling, VA 20165

       Defendant.

### CIVIL COMPLAINT

COMES NOW the plaintiff by and through the undersigned counsel, and issues this Civil Complaint to the Defendant, and for her complaint, states as follows:

### JURISDICTION and VENUE

1.     Plaintiff is a natural person who currently resides in Loudoun County, Virginia.

2.     Defendant is a natural person who currently resides in Loudoun County, Virginia and maintains a regular place of business in Loudoun County, Virginia.

3.     This case arises out of facts and circumstances that occurred wholly within Loudoun County, Virginia.

4.     In this suit, the plaintiff seeks damages in excess of $25,000.00 in the aggregate.

5.     Based upon the forgoing, jurisdiction and venue lie in the Circuit Court for Loudoun County, Virginia.

### FACTS COMMON TO ALL COUNTS

6.     Defendant is a Virginia board certified orthopedic surgeon who, at all times relevant to this suit, maintained a practice in Loudoun County, Virginia.

1

7.     In November 2021, the plaintiff went to the defendant to have surgery performed on her spine.

8.     On or about November 17, 2021, the plaintiff attended a pre-operation exam with the defendant at his office.

9.     During the pre-operation meeting, the defendant directed the plaintiff to bed over at the waist facing away from him on the pretense of examining her spine.

10.     As the plaintiff stood up from her bent over position, the defendant wrapped his arms around the plaintiff from behind and ran his hands up under her shirt, groping her.

11.     After the plaintiff pulled away from the defendant, he attempted to kiss her several times.

12.     The plaintiff, who is married, texted and called her husband immediately after leaving the defendant's office.

13.     The plaintiff's surgery was scheduled for November 22, 2021 and the plaintiff decided not to change surgeons, as it would mean rescheduling her surgery, potentially for months later.

14.     On November 22, 2021, the plaintiff underwent surgery performed by the defendant.

15.     After the surgery, the defendant sent a stream of lurid and suggestive text messages to the plaintiff's phone and requested that the conversation be moved to his private WhatsApp messaging service rather than his work phone.

16.     In the text messages, the defendant called the plaintiff beautiful, and asked whether or not her husband "stays over," which the plaintiff interpreted as him trying to find out when she would be alone.

2

17.     On the morning of November 23, 2021, the plaintiff was recovering from surgery and under heavy doses of pain medication, a situation that required her to be confined to her hospital bed.

18.     While the plaintiff was confined to her bed, the defendant came to her hospital room while she was alone on the pretense of checking on her post-surgery.

19.     The defendant then made comments to the plaintiff about her breasts.

20.     The defendant also made comments to the plaintiff about the grooming on her genital area, which he had apparently seen during the surgery, and asked her if she had done that specially for him, while pointing at the plaintiff's crotch.

21.     The defendant continued to make inappropriate remarks to the plaintiff about her body and told her that she was "very beautiful."

22.     The defendant then showed the plaintiff pictures of her that he had taken with his cell phone during the surgery.

23.     The defendant then kissed the plaintiff while she was helplessly confined to her bed and asked her what her husband would think if her husband knew that he had kissed her.

24.     The defendant then left the plaintiff's hospital room and the plaintiff immediately called and texted her husband.

25.     The plaintiff then reported what had happened to the hospital staff, who informed her that there was nothing that they could do for her, as the defendant was not a hospital employee.

26.     All other facts necessary to support each count are set forth therein, *Infra.*

### COUNT I: BATTERY

27.     The facts alleged in paragraphs 1 through 25 above are realleged and incorporated herein by reference as if each were set forth in its entirety, verbatim.

3

28.     On or about November 17, 2021, the defendant put his hands under the plaintiff's shirt and groped her.

29.     The defendant did not have the plaintiff's permission to touch her or grope her under her shirt and she did not want or invite him to do so.

30.     The defendant touched the plaintiff for the purpose of satisfying his own prurient interests.

31.     The defendant's actions constitute a battery against the plaintiff.

32.     Because the defendant's actions constitute an intentional tort, the plaintiff is entitled to seek punitive damages against the defendant.

WHEREFORE the plaintiff prays that this Court award her a judgment against the defendant for battery.

## COUNT II: ASSAULT

33.     The facts alleged in paragraphs 1 through 25 above are realleged and incorporated herein by reference as if each were set forth in its entirety, verbatim.

34.     On or about November 17, 2021, the defendant attempted, unsuccessfully, to kiss the plaintiff.

35.     The defendant did not have the plaintiff's permission to kiss her and she did not want or invite him to do so.

36.     The defendant's actions placed the plaintiff in fear of imminent unwanted touching of a sexual nature by the defendant.

37.     The defendant's actions constitute assault against the plaintiff.

38.     Because the defendant's actions constitute an intentional tort, the plaintiff is entitled to seek punitive damages against the defendant.

4

WHEREFORE the plaintiff prays that this Court award her a judgment against the defendant for battery.

### COUNT III: BATTERY

39. The facts alleged in paragraphs 1 through 25 above are realleged and incorporated herein by reference as if each were set forth in its entirety, verbatim.

40. On November 23, 2021, at a time when the plaintiff was helplessly confined to her hospital bed and under the influence of heavy pain medication, the defendant kissed her on her mouth.

41. The defendant did not have the plaintiff's permission to kiss her and she did not want or invite him to do so.

42. The defendant's actions constitute battery against the plaintiff.

43. Because the defendant's actions constitute an intentional tort, the plaintiff is entitled to seek punitive damages against the defendant.

WHEREFORE the plaintiff prays that this Court award her a judgment against the defendant for battery.

### AD DAMNUM

The plaintiff prays that this Court award her a judgment against the defendant in the following amounts:

A. For Count I, Battery: $100,000.00, together with punitive damages in the amount of $300,000.00.

B. For Count II, Assault: $50,000.00, together with punitive damages in the amount of $150,000.00.

C. For Count III, Battery: $300,000.00, together with punitive damages in the amount

of $300,000.00;

Together with her costs of bringing this action and interest thereon at the judgment rate.

**JURY DEMAND**

The plaintiff hereby demands a trial by jury on the merits of the case.

Respectfully submitted:
Jane Doe
By counsel:

James P. Magner, Esq., VSB No. 45599
Magner Law, PC
6 Wirt Street, NW, First Floor
Leesburg, VA 20176
T (540) 431-4400
F (703) 543-5788
jim@magnerlaw.com
*Counsel for the Plaintiff*

A COPY-TESTE
Gary M. Clemens, Clerk
By
Deputy Clerk

6

**VIRGINIA:**

## IN THE CIRCUIT COURT FOR LOUDOUN COUNTY

| | |
|---|---|
| **BRIAN ALEXANDER**<br>42495 Spinks Ferry Road<br>Leesburg, VA 20176 | :<br><br>: |
| **Plaintiff,** | : |
| v. | :  At Law No. CL22-5632 |
| **MARK SHASTI, M.D.**<br>Orthopedic & Spine Surgery Institute<br>19450 Deerfield Avenue<br>Suite 200<br>Leesburg, VA 20176 | :<br><br>:<br><br>: |
| | : |
| and | |
| | : |
| **ORTHOPAEDIC & SPINE SURGERY<br>INSTITUTE, PLLC**<br>19450 Deerfield Avenue<br>Suite 200<br>Leesburg, VA 20176 | :<br><br>:<br><br>: |
| **Defendants.** | |

### COMPLAINT FOR DAMAGES
### (Medical Malpractice)

COMES NOW, Plaintiff Brian Alexander ("Plaintiff" or "Mr. Alexander"), by and through counsel, and respectfully moves for judgment against Defendant Mark Shasti, M.D. ("Dr. Shasti") and Defendant Orthopaedic & Spine Surgery Institute, PLLC

Regan Zambri Long
1919 M Street. NW
Suite 350
Washington, D.C. 20036

202-463-3030

- 1 -

"(OSSI," and with Dr. Shasti, herein called "Defendants") on the grounds and in the amount set forth below:

## JURISDICTION AND VENUE

1.    This cause of action arises under Virginia Code Section 8.01-581.1 et seq., as well as the common law of Virginia. Therefore, jurisdiction is appropriate in this Court.

2.    The negligence leading to the severe and permanent injuries to Plaintiff occurred in Loudoun County, Virginia, and thus venue is appropriate in this Court.

## PARTIES

3.    At all times relevant to this action, Plaintiff was a resident of Alexandria, Virginia.

4.    At all times relevant to this action, Dr. Shasti was a medical provider licensed to practice and practicing in the Commonwealth of Virginia at all times relevant hereto. Upon information and belief, Dr. Shasti was acting as an employee, agent and/or servant of OSSI.

5.    At all times relevant to this action, OSSI was a professional organization of physicians and/or health care providers incorporated in the Commonwealth of Virginia, with its headquarters and principal place of business in the Commonwealth of Virginia.

Regan Zambn Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

- 2 -

6.      OSSI is vicariously liable for the acts and omissions of its employees, agents, and/or servants who were involved in the care and treatment provided to Plaintiff, including, without limitation, Dr. Shasti.

### FACTS

7.      Mr. Alexander received medical care from Dr. Shasti for approximately one year prior to October 8, 2020.

8.      On September 28, 2020, Mr. Alexander presented to Dr. Shasti with continued complaints of low back pain and right leg pain.  Mr. Alexander had failed conservative treatment for spondylosis and radiculopathy.  Dr. Shasti and Mr. Alexander discussed undergoing a L4-5 OLIF-oblique lumbar interbody fusion and L4-5 PLDF posterior lumbar decompression and fusion to relieve Mr. Alexander's back pain.  Dr. Shasti recommended this surgery.  Dr. Shasti did not advise Mr. Alexander that the surgery had several risks, including loss of mobility and function in his legs and other areas of his body.

9.      On October 8, 2020, Mr. Alexander underwent an L4-5 OLIF-oblique lumbar interbody fusion and L4-5 PLDF posterior lumbar decompression and fusion at Stone Springs Hospital in Dulles, Virginia.  This procedure was performed by Dr. Shasti, in his capacity as an employee of OSSI.

10.      After the surgery on October 8, 2020, Mr. Alexander was in excruciating pain, was experiencing general weakness, numbness/tingling in the middle of his back, and at numbness/stiffness at the surgical site.  Despite the pain, weakness,

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

- 3 -

numbness/tingling, and stiffness, Mr. Alexander was discharged home on October 9, 2020.

11. From October 9, 2020 until October 16, 2020, Mr. Alexander was in excruciating pain and had complaints of numbness in left leg. Mr. Alexander made several attempts to contact Dr. Shasti and was advised that there was no need for emergency intervention during this time.

12. On October 16, 2020, Mr. Alexander presented to INOVA Loudoun Hospital with complaints of numbness to his left leg and hypersensitive pain in his right leg, which had been getting worse. Mr. Alexander underwent a CT scan of the lumbar spine which revealed that the interbody fusion device was eccentric in the disc space and encroaching on the R L4-5 neural foramina. It was also discovered that the L4-5 cage was the incorrect size and was incorrectly placed by Dr Shasti during this surgery. Based on these findings, it was determined that Mr. Alexander would need to have surgery to correct the prior surgery.

13. Despite the excruciating pain and the need for revision surgery, the revision did not occur until October 22, 2020. During the interim time, Mr. Alexander had to be kept in the hospital for pain management.

14. On October 22, 2020, Mr. Alexander underwent a surgical removal of prior oblique lumbar interbody fusion hardware with replacement of oblique lumbar interbody fusion at L4-5.

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

- 4 -

15. On October 23, 2020, Mr. Alexander had no feeling in his right leg. Despite this, Mr. Alexander was discharged home.

16. On October 30, 2020, Mr. Alexander presented to INOVA Fairfax Hospital's Emergency Department with complaints of continued and increased pain since recent lumbar surgery. Mr. Alexander underwent several examinations and radiologic screenings; however, it was determined that another surgery was not indicated, and he was discharged home on November 5, 2020.

17. Mr. Alexander continues to experience pain and numbness despite continuing treatment with pain specialists, physical therapists, and other health care providers.

## COUNT I
### (Medical Negligence)

18. Plaintiff incorporates by reference paragraphs 1 through 17 above, and further alleges that, at all times relevant to the allegations in the Complaint, the Plaintiff had a patient/health care provider relationship with Defendants. By virtue of the patient/health care provider relationship, the Defendants were obligated to use the degree of care and skill of reasonably prudent health care providers practicing under the same or similar circumstances.

19. Plaintiff further alleges that Defendants breached the applicable standard of care by committing negligent acts and/or omissions, including but not limited to: (1) failure to properly diagnose and advise Plaintiff of his options given his symptoms; (2)

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

- 5 -

failure to properly work up Plaintiff for his symptoms, including failure to address his complaints of pain; (3) failure to timely order MRI, CT Scan and/or other types of diagnostic tests to identify the reason for the pain in Plaintiff's back and legs; (4) failure to diagnosis Plaintiff's misplaced L4-5 cage in a timely manner; (5) failure to treat Plaintiff's misplaced L4-5 cage in a timely manner; (6) placing an incorrectly sized L4-5 cage; (7) failure to place the cage in the correct position; (8) failure to obtain timely and proper specialty consults under the circumstances; and (9) in otherwise failing to provide Plaintiff with the degree of medical skill and attention required of health care providers under the circumstances.

20.    Plaintiff further alleges that the negligent acts and/or omissions committed by the Defendants directly and proximately caused or contributed to cause significant physical injuries, ultimately resulting in Plaintiff's severe and permanent injuries, including unnecessary surgeries, permanent pain, permanent tingling/numbness of the legs, loss of function of his leg, and permanent gait difficulties.

21.    As a further direct and proximate result of the negligence of the Defendants, Plaintiff has suffered and will continue to suffer much physical pain, suffering, gait difficulties, associated embarrassment, inconvenience, loss of enjoyment of life, and mental anguish.

22.    As a further direct and proximate result of the negligence of the Defendants, Plaintiff Brian Alexander has incurred substantial medical expenses and lost income and will incur future medical expenses, future lost income, and related damages.

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C 20036

202-463-3030

- 6 -

WHEREFORE, Plaintiff, Brian Alexander, demands judgment against the Defendants, jointly and severally, in the full and just amount of $3,000,000.00 (Three Million Dollars) plus pre-judgment interest from October 8, 2020, and post-judgment interest, costs assessed against the Defendants, and for any and all other relief this Court deems appropriate.

## TRIAL BY JURY IS DEMANDED

Plaintiff respectfully requests a trial by jury on all issues.

Brian Alexander

By Counsel

Respectfully submitted,

REGAN ZAMBRI & LONG PLLC

By:

Paul Cornoni        VSB #: 95102
pcornoni@reganfirm.com
1919 M Street, N.W., Suite 350
Washington, D.C. 20036
PH:  (202) 463-3030
FX:  (202) 463-0667
*Counsel for Plaintiff*

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

A COPY-TESTE
Gary M. Clemens, Clerk
By
Deputy Clerk

- 7 -



## REGAN ZAMBRI LONG

YOUR PARTNERS FOR JUSTICE

**Paul Cornoni**

Direct 202-349-2807
pcornoni@reganfirm.com
*Admitted in DC, MD, VA and MA*

September 27, 2022

***Via Hand Delivery***

Clerk of the Court
Loudoun County Circuit Court
18 E. Market Street
Leesburg, VA 20178

Re:   Brian Alexander v. Mark Shasti, M.D.

Dear Sir or Madam:

Enclosed is a signed Cover Sheet and an original and four copies of the Complaint for Damages that we are requesting that you file on behalf our client, Brian Alexander. Also enclosed is our firm's check in the amount of $346.00 for the filing fee. **We do not want to serve the Complaint at this time; therefore, we are not requesting service.**

If you have any questions concerning this matter, please contact us. Thank you for your attention to this request.

Sincerely,

Paul Cornoni

Enclosures

REGAN ZAMBRI & LONG, PLLC   1919 M Street NW   Suite 350   Washington, D.C. 20036-3513   *Phone* 202-463-3030 · *Fax* 202-463-0667   reganfirm.com

**VIRGINIA:**

## IN THE CIRCUIT COURT FOR LOUDOUN COUNTY

BRIAN ALEXANDER                              :
42495 Spinks Ferry Road
Leesburg, VA 20176                           :

      **Plaintiff,**                      :

      v.                                 :     At Law No.
                                           CL24-1459

MARK SHASTI, M.D.                            :
Orthopedic & Spine Surgery Institute
19450 Deerfield Avenue                       :
Suite 200
Leesburg, VA 20176                           :

                                     :

and                                          :

ORTHOPAEDIC & SPINE SURGERY
INSTITUTE, PLLC                              :
19450 Deerfield Avenue
Suite 200                                    :
Leesburg, VA 20176

      **Defendants.**

### COMPLAINT FOR DAMAGES
#### (Medical Malpractice)

COMES NOW, Plaintiff Brian Alexander ("Plaintiff" or "Mr. Alexander"), by

and through counsel, and respectfully moves for judgment against Defendant Mark

Shasti, M.D. ("Dr. Shasti") and Defendant Orthopaedic & Spine Surgery Institute, PLLC

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D C 20036

202-463-3030

- 1 -

"(OSSI," and with Dr. Shasti, herein called "Defendants") on the grounds and in the amount set forth below:

## JURISDICTION AND VENUE

1.    This cause of action arises under Virginia Code Section 8.01-581.1 et seq., as well as the common law of Virginia.   Therefore, jurisdiction is appropriate in this Court.

2.    The negligence leading to the severe and permanent injuries to Plaintiff occurred in Loudoun County, Virginia, and thus venue is appropriate in this Court.

## PARTIES

3.    At all times relevant to this action, Plaintiff was a resident of Alexandria, Virginia.

4.    At all times relevant to this action, Dr. Shasti was a medical provider licensed to practice and practicing in the Commonwealth of Virginia at all times relevant hereto.   Upon information and belief, Dr. Shasti was acting as an employee, agent and/or servant of OSSI.

5.    At all times relevant to this action, OSSI was a professional organization of physicians and/or health care providers incorporated in the Commonwealth of Virginia, with its headquarters and principal place of business in the Commonwealth of Virginia.

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

- 2 -

6.      OSSI is vicariously liable for the acts and omissions of its employees, agents, and/or servants who were involved in the care and treatment provided to Plaintiff, including, without limitation, Dr. Shasti.

## FACTS

7.      Mr. Alexander received medical care from Dr. Shasti for approximately one year prior to October 8, 2020.

8.      On September 28, 2020, Mr. Alexander presented to Dr. Shasti with continued complaints of low back pain and right leg pain.  Mr. Alexander had failed conservative treatment for spondylosis and radiculopathy.  Dr. Shasti and Mr. Alexander discussed undergoing a L4-5 OLIF-oblique lumbar interbody fusion and L4-5 PLDF posterior lumbar decompression and fusion to relieve Mr. Alexander's back pain.  Dr. Shasti recommended this surgery.  Dr. Shasti did not advise Mr. Alexander that the surgery had several risks, including loss of mobility and function in his legs and other areas of his body.

9.      On October 8, 2020, Mr. Alexander underwent an L4-5 OLIF-oblique lumbar interbody fusion and L4-5 PLDF posterior lumbar decompression and fusion at Stone Springs Hospital in Dulles, Virginia.  This procedure was performed by Dr. Shasti, in his capacity as an employee of OSSI.

10.     After the surgery on October 8, 2020, Mr. Alexander was in excruciating pain, was experiencing general weakness, numbness/tingling in the middle of his back, and at numbness/stiffness at the surgical site.    Despite the pain, weakness,

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

- 3 -

numbness/tingling, and stiffness, Mr. Alexander was discharged home on October 9, 2020.

11.    From October 9, 2020 until October 16, 2020, Mr. Alexander was in excruciating pain and had complaints of numbness in left leg. Mr. Alexander made several attempts to contact Dr. Shasti and was advised that there was no need for emergency intervention during this time.

12.    On October 16, 2020, Mr. Alexander presented to INOVA Loudoun Hospital with complaints of numbness to his left leg and hypersensitive pain in his right leg, which had been getting worse. Mr. Alexander underwent a CT scan of the lumbar spine which revealed that the interbody fusion device was eccentric in the disc space and encroaching on the R L4-5 neural foramina. It was also discovered that the L4-5 cage was the incorrect size and was incorrectly placed by Dr Shasti during this surgery. Based on these findings, it was determined that Mr. Alexander would need to have surgery to correct the prior surgery.

13.    Despite the excruciating pain and the need for revision surgery, the revision did not occur until October 22, 2020. During the interim time, Mr. Alexander had to be kept in the hospital for pain management.

14.    On October 22, 2020, Mr. Alexander underwent a surgical removal of prior oblique lumbar interbody fusion hardware with replacement of oblique lumbar interbody fusion at L4-5.

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

- 4 -

15.    On October 23, 2020, Mr. Alexander had no feeling in his right leg. Despite this, Mr. Alexander was discharged home.

16.    On October 30, 2020, Mr. Alexander presented to INOVA Fairfax Hospital's Emergency Department with complaints of continued and increased pain since recent lumbar surgery.  Mr. Alexander underwent several examinations and radiologic screenings; however, it was determined that another surgery was not indicated, and he was discharged home on November 5, 2020.

17.    Mr. Alexander continues to experience pain and numbness despite continuing treatment with pain specialists, physical therapists, and other health care providers.

## COUNT I
### (Medical Negligence)

18.    Plaintiff incorporates by reference paragraphs 1 through 17 above, and further alleges that, at all times relevant to the allegations in the Complaint, the Plaintiff had a patient/health care provider relationship with Defendants.  By virtue of the patient/health care provider relationship, the Defendants were obligated to use the degree of care and skill of reasonably prudent health care providers practicing under the same or similar circumstances.

19.    Plaintiff further alleges that Defendants breached the applicable standard of care by committing negligent acts and/or omissions, including but not limited to: (1) failure to properly diagnose and advise Plaintiff of his options given his symptoms; (2)

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C 20036

202-463-3030

- 5 -

failure to properly work up Plaintiff for his symptoms, including failure to address his complaints of pain; (3) failure to timely order MRI, CT Scan and/or other types of diagnostic tests to identify the reason for the pain in Plaintiff's back and legs; (4) failure to diagnosis Plaintiff's misplaced L4-5 cage in a timely manner; (5) failure to treat Plaintiff's misplaced L4-5 cage in a timely manner; (6) placing an incorrectly sized L4-5 cage; (7) failure to place the cage in the correct position; (8) failure to obtain timely and proper specialty consults under the circumstances; and (9) in otherwise failing to provide Plaintiff with the degree of medical skill and attention required of health care providers under the circumstances.

20.    Plaintiff further alleges that the negligent acts and/or omissions committed by the Defendants directly and proximately caused or contributed to cause significant physical injuries, ultimately resulting in Plaintiff's severe and permanent injuries, including unnecessary surgeries, permanent pain, permanent tingling/numbness of the legs, loss of function of his leg, and permanent gait difficulties.

21.    As a further direct and proximate result of the negligence of the Defendants, Plaintiff has suffered and will continue to suffer much physical pain, suffering, gait difficulties, associated embarrassment, inconvenience, loss of enjoyment of life, and mental anguish.

22.    As a further direct and proximate result of the negligence of the Defendants, Plaintiff Brian Alexander has incurred substantial medical expenses and lost income and will incur future medical expenses, future lost income, and related damages.

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C  20036

202-463-3030

- 6 -

WHEREFORE, Plaintiff, Brian Alexander, demands judgment against the Defendants, jointly and severally, in the full and just amount of $3,000,000.00 (Three Million Dollars) plus pre-judgment interest from October 8, 2020, and post-judgment interest, costs assessed against the Defendants, and for any and all other relief this Court deems appropriate.

## TRIAL BY JURY IS DEMANDED

Plaintiff respectfully requests a trial by jury on all issues.

Brian Alexander

By Counsel

Respectfully submitted,

REGAN ZAMBRI & LONG PLLC

By: _____

Paul Cornoni      VSB #: 95102
pcornoni@reganfirm.com
1919 M Street, N.W., Suite 350
Washington, D.C. 20036
PH: (202) 463-3030
Fx: (202) 463-0667
*Counsel for Plaintiff*

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C 20036

202-463-3030

A COPY-TESTE
Gary M. Clemens, Clerk
By _____
Deputy Clerk

- 7 -

**VIRGINIA:**

## IN THE LOUDOUN COUNTY CIRCUIT COURT

| | |
|---|---|
| **SANDY LUEBCKE** | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Case No.: CL24-4935 |
| | : |
| **Dr. MARK SHASTI** | : |
| 46090 Lake Center Plaza, Suite 102 | : |
| Sterling, VA 20165 | : |
| | : |
| Serve: Dr. Mark Shasti | : |
| 46090 Lake Center Plaza, Suite 102 | : |
| Sterling, VA 20165 | : |
| | : |
| **INOVA HEALTHCARE SERVICES** | : |
| 8110 Gatehouse Rd, Suite 200, East Tower | : |
| Falls Church, VA 22042 | : |
| | : |
| Serve R/A: CT Corporation System | : |
| 4701 Cox Rd, Suite 285 | : |
| Glen Allen , VA 23060 | : |
| | : |
| **INOVA PHYSICIAN PARTNERS, INC.** | : |
| **dba Inova Medical Group,** | : |
| 8110 Gatehouse Rd | : |
| Ste 200 East Tower | : |
| Falls Church, VA 22042 | : |
| | : |
| PLEASE SERVE R/A: C T Corporation | : |
| System | : |
| 4701 Cox Rd. | : |
| Ste 285 | : |
| Glen Allen, VA 23060 | : |
| | : **JURY TRIAL DEMANDED** |
| Defendant(s). | : |

## COMPLAINT

COMES NOW, the Plaintiff, Sandy Luebcke ("Ms. Luebcke" or "Plaintiff"), by counsel, and moves this Honorable Court for judgment against Defendants, Dr. Mark Shasti ("Dr. Shasti"), Physician Partners, Inc. d/b/a Inova Medical Group ("IPP"), and Inova Healthcare Services ("INOVA")(collectively "Defendants"), on the grounds and praying for the relief hereinafter set forth:

### INTRODUCTION

1. Plaintiff brings this action against Dr. Shasti for medical malpractice based upon the medical negligence of the Defendants' in their care and treatment of Plaintiff.

2. Plaintiff brings this action against INOVA and IPP for vicarious liability, respondent superior, and/or agency.

PARTIES

3. Plaintiff is a resident of the Commonwealth of Virginia.

4. Dr. Shasti is a resident of the Commonwealth of Virginia and performed the surgery at issue in Inova Loudoun Hospital. During all relevant times, Dr. Shasti was an employee of INOVA and/or IPP.

5. INOVA and/or IPP was the employer of Dr. Shasti during the time he performed the surgery and treatment of Plaintiff.

JURISDICTION AND VENUE

6. Plaintiff resides in Loudoun County, Virginia. The treatment at issue largely occurred in Loudoun County, Virginia.

7. The causes of action raised in this Complaint arose or substantially took place in Loudoun County, Virginia. The surgeries and related consultations at issue occurred in Loudoun, Virginia. Thus, jurisdiction is proper in this Court pursuant to Virginia Code § 8.01-328.1(A)(1), (A)(3) and venue is proper in this Court pursuant to Virginia Code § 8.01-262(1), (2), and (4).

STATEMENT OF FACTS

8. Plaintiff underwent her first spinal surgery with Dr. Shasti on June 20, 2022.

9. The procedure was principally for a posterior spinal decompression fusion T4-Pelvis, removal of hardware, allograft, and autograft.

10. Prior to the surgery, Plaintiff was fully able to walk and had functional use of both her legs.

11. Subsequently, patient developed numbness and weakness in her legs. Patient lost the full or

2

useful function of both her legs.

12. This resulted in a hospitalization and a diagnosis of flaccid paralysis of bilateral lower extremities with no sensory from T4 dermatome down.

13. Plaintiff was surgically treated by Dr. Shasti again on August 29, 2022 to try and address the issues; however, the operative note was generated on August 31, 2022 and mistakenly indicates the operation date as (8/31/22).

14. In addition, there is an additional treatment note in the medical records by Dr. Shasti for September 6, 2022, indicating a third surgical intervention on September 6, 2022.

15. The surgical treatments of Dr. Shasti did not remediate the ailments of Plaintiff.

16. The subsequent treatments had no utility or use to Plaintiff, but was just additional surgery she was forced to endure.

17. Dr. Shasti was unable to identify the error and/or to determine how to effectively treat diagnosis, or care for Plaintiff.

18. Plaintiff continued to suffer from flaccid paralysis of bilateral lower extremities with no sensory from T4 dermatome down.

19. Dr. Shasti removed a significant amount of hardware (i.e. screws) from Plaintiff.

20. Dr. Shasti placed a significant volume more of hardware in Plaintiff.

21. Plaintiff's subsequent paralysis should not have occurred.

22. Dr. Shasti deviated from the requisite level of medical care during the course of Plaintiff's treatment, including but not limited to, the identification and diagnosis of the surgical intervention on June 20, 2022, the subsequent remedial treatment failures on August 29, 2022 and September 6, 2022, the surgical technique related to the removal and placement of hardware (including but not limited to screws), the determination regarding diagnosis and recommended path forwarded, the determination on how to and in what method to proceed with surgical intervention, the execution

and identification of the intraoperative care, the subsequent remedial surgeries on August 29, 2022 and September 6, 2022, failing to refer Plaintiff to a physician who had the skill, knowledge, and experience to properly assess, diagnose, and provide for the medical services needed by Plaintiff.

23.     Further, the risk and benefits of the surgery were not properly advised to Plaintiff.

24.     To a reasonable degree of medical probability, this deviation of the standard of care was the proximate cause to the patient suffering from her medical injuries, including but not limited to flaccid paralysis of bilateral lower extremities with no sensory from T4 dermatome down, substantial additional medical intervention, pain and suffering, medical bills/costs, and severe emotional distress.

25.     As a proximate cause of the deviations of the standard of care, Plaintiff is entitled to damages against Defendants in the amount of $3,000,000.

## STATEMENT OF CLAIMS

## COUNT I (MEDICAL NEGLIGENCE/MALPRACTICE)
### (Dr. Shasti )

26.     Plaintiff restates, re-pleads, and incorporates by reference each and every allegation set forth above as if fully set forth herein.

27.     Defendant rendered professional medical services in the treatment and care of Plaintiff.

28.     At the time that Plaintiff sought the professional services of Defendant, Defendant maintained a medical office and held themselves out to the general public as competent and skilled medical professional.

29.     Defendant had a duty to provide ordinary care, and to exercise that standard of degree of care and skill required of health care providers, consistent with the expertise that the Defendant presented to the community at large.

30.     The Defendants negligently failed to exercise the proper degree of knowledge, skill and competence in examining, treating, and caring for Plaintiff.

4

31.     As a proximate result of the negligence of Defendant, Plaintiff suffered serious injury, including but not limited to paralysis, subsequent medical treatment and costs related to the remedial treatment, pain and suffering, emotional distress, costs, pre and post judgment interest.

32.     As a further proximate result of the negligence of Defendants, Plaintiff has incurred damages of $3,000,000.00.

### COUNT II (VICARIOUS LIABILITY, RESPONDEAT SUPERIOR, AND/OR AGENCY)<br>(INOVA and IPP)

33.     Plaintiff restates, re-pleads, and incorporates by reference each and every allegation set forth above as if fully set forth herein.

34.     At all relevant times, Dr. Shasti was employed by and/or acting on behalf of INOVA and/or IPP.

35.     At all relevant times, Dr. Shasti acted within the scope of their employment/agency with INOVA.

36.     As described herein, Defendants directly and proximately caused personal injury to Plaintiff.

37.     As a proximate result of the negligence of Defendants, Plaintiff suffered serious injury, including but not limited to paralysis, subsequent medical treatment and costs related to the remedial treatment, pain and suffering, emotional distress, costs, pre and post judgment interest.

38.     As a further proximate result of the negligence of Defendants, Plaintiff's injuries have caused, and continue to cause, great mental, physical, and emotional pain and suffering.

39.     As a further proximate result of the negligence of Defendants, Plaintiff has incurred damages in the amount of $3,000,000.00.

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment against Defendants, jointly and severally, as follows:

A.  $3,000,000.00, plus costs, and pre and post judgment interest; and

5

B.  For any additional relief this Court may deem just and proper.

    **JURY TRIAL DEMANDED** – Plaintiff demands a Jury trial on all issues so triable.

           Respectfully submitted,

           Sandy Luebcke,


           By Counsel,

           Dirk McClanahan
           Virginia State Bar No.:  81208
           McClanahan Powers, PLLC
           3160 Fairview Park Drive, Suite 410
           Falls Church, VA 22042
           Tel: (703) 520-1326
           Fax: (703) 828-0205
           Email: dmcclanahan@mcplegal.com
           *Counsel for Plaintiff*

A COPY-TESTE
Gary M. Clemens, Clerk
By
Deputy Clerk

6

Uploaded: 2024OCT03 14:14 Filed By:MHOUCK on behalf of Bar# 77295 RSCHMALZLE Reference: EF-155832
E-Filed: 2024OCT03 LOUDOUN CC ANGELA.WALSH at 2024OCT03 14:47 CL24005694-00

VIRGINIA:

## IN THE CIRCUIT COURT OF LOUDOUN COUNTY

| | | |
|---|---|---|
| DAVID M. TILTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. |
| MARK SHASTI, MD | ) | |
| | ) | |
| and | ) | |
| | ) | |
| INOVA HEALTH CARE SERVICES. | ) | |
| Registered Agent: | ) | |
| CT Corporation System | ) | |
| 4701 Cox Road, Suite 285 | ) | |
| Glen Allen, VA 23060 | ) | |
| | ) | |
| Both Via Private Process Service | ) | |
| | ) | TRIAL BY JURY DEMANDED |
| Defendants. | ) | |

## COMPLAINT

COMES NOW, David M. Tilton ("Mr. Tilton"), by counsel, and moves this Honorable Court

for a Judgment and Award of Execution against the defendants, Mark Shasti, MD and Inova Health

Care Services, jointly and severally, in the sum of THREE MILLION DOLLARS ($3,000,000.00),

plus pre-judgment interest and post-judgment interest for the following reasons, to-wit:

## THE PARTIES

1. Mr. Tilton, at all times, relevant to this action was a resident of Loudoun County,

Virginia.

2. Upon information and belief, Dr. Shasti is and was, at all times relevant to this action,

a resident of Loudoun County, Virginia.

3.    Inova Health Care Services ("Inova") is a Virginia professional corporation with its principal place of business in Fairfax County, Virginia.

4.    Upon information and belief, Dr. Shasti is and was, at all times relevant to this action, employed by Inova.

5.    The events that give rise to this cause of action occurred in Loudoun County, Virginia.

## COUNT I – MEDICAL MALPRACTICE (Surgery)

6.    The allegations of paragraphs 1 through 5 are reasserted as if fully set forth herein.

7.    On August 12, 2022, Mr. Tilton consulted with Dr. Shasti.

8.    Mr. Tilton complained of lower back pain radiating to the hips.

9.    At the time, Mr. Tilton was running an average of five (5) miles per day.

10.    Mr. Tilton is a retired member of the Navy SEALS.

11.    Mr. Tilton has some history of back issues related to his service, including a broken back in 2002 while serving in Afghanistan.

12.    In 2019 he had a C6-C7 fusion surgery, which was successful.

13.    While Mr. Tilton was experiencing daily pain in his back at the time he consulted with Dr. Shasti, he was living a happy and productive life and had no issues getting around on a daily basis.

14.    Mr. Tilton was not physically limited by his back issues in any way.

15.    Dr. Shasti told Mr. Tilton that he needed surgery urgently.

16.    Dr. Shasti recommended a surgery that would fuse the L4-S1 vertebrae, fuse the L4-L5 vertebrae, fuse the L%-SI vertebrae, place a Prolift interbody device, and insertion of screws.

17.    Dr. Shasti performed this surgery on Mr. Tilton on October 17, 2022.

18.    Considering all the facts known to Dr. Shasti at the time, it was a deviation from the standard of care to recommend and perform this surgery.

2

19. At the times Dr. Shasti recommended and performed this surgery, the was no urgency for Mr. Tilton to receive back surgery.

20. Dr. Shasti recommended and performed a treatment option that had high risks and was also very expensive.

21. Dr. Shasti benefited financially in the short term greatly from the surgery and far more than he would have from other treatment options.

22. Upon information and belief, Inova terminated Dr. Shasti's employment because he performed this surgery and other large surgeries that were not indicated by his patients' presentation.

23. Mr. Tilton's consent to the surgery was not informed consent because Dr. Shasti misrepresented that the need for any surgery was urgent.

24. Mr. Tilton's consent to the surgery was not informed consent because Dr. Shasti misrepresented that performing the surgery was within the standard of care.

25. Mr. Tilton suffered serious, irreparable harm as a result of the surgery.

26. Immediately after the surgery, Mr. Tilton experienced worse back pain that was different in nature from the back pain he suffered before surgery.

27. Over time, this new pain also radiated to the bilateral hips.

28. After surgery, Mr. Tilton had profound left psoas weakness.

29. The left psoas weakness was not an expected or predicted result of the surgery.

30. After the surgery, Mr. Tilton has no position available that will alleviate his pain.

31. Mr. Tilton performed physical therapy after surgery, but the pain only worsened over time.

32. Dr. Shasti only continued to treat Mr. Tilton for approximately 3 months after surgery.

33. Dr. Shasti's discontinuation of treatment is also a deviation from the standard of care.

3

34. Mr. Tilton consulted with Dr. Michael K. Rosner on June 20, 2023.

35. Dr. Rosner recommended revision surgery to fix the damage done by Dr. Shasti.

36. Dr. Rosner successfully performed revision surgery fusing the L3-L4, L4-L5, and L3-S1.

37. Mr. Tilton is, however, still left permanently disabled and permanently in pain.

38. Mr. Tilton is no longer able to run.

39. Mr. Tilton cannot step from the curb to the street without being careful, lest he risk reinjury.

40. Mr. Tilton is in daily pain.

41. Mr. Tilton cannot lift more than 25 lbs

42. Mr. Tilton can no longer walk more than short distances (200 Yards) without massive pain

43. Mr. Tilton can no longer work out in any way other than light work out in a pool

44. Mr. Tilton cannot bend over and pick up anything, nor can he bend enough to put on socks or shoes.

45. Mr. Tilton cannot stand for prolonged periods of time.

46. Plaintiff's counsel certifies, pursuant to Virginia Code Ann. § 8.01-20.1, that Mr. Tilton has obtained from an expert witness that Mr. Tilton reasonably believes would qualify as an expert witness pursuant to Subjection A of § 8.01-581.20 a written opinion signed by the expert that, based upon a reasonable understanding of the facts, Dr. Shasti deviated from the applicable standard of care and the deviation was the proximate cause of Mr. Tilton's injuries. The expert's opinion was rendered with a reasonable degree of medical probability.

47.    Inova is vicariously liable for the medical malpractice/negligence of Dr. Shasti because Dr. Shasti was an employee of Inova acting within the scope of his employment when he committed the medical malpractice described above.

48.    Mr. Tilton claims damages against the Defendants, jointly and severally, in the amount of THREE MILLION DOLLARS ($3,000,000.00) for compensatory damages.

WHEREFORE, the Plaintiff prays that he be granted a judgment against the Defendants, Mark Shasti, MD and Inova Health Care Services jointly and severally, in the amount of THREE MILLION DOLLARS ($3,000,000.00) for compensatory damages and interest from the date of the cause of action, October 17, 2022, pursuant to Section 8.01-382 of the Code of Virginia, 1950, as amended, plus punitive damages in the amount of THREE HUNDRED AND FIFTY THOUSAND DOLLARS ($350,000), plus costs.

A trial by jury is demanded.

Respectfully Submitted,
DAVID M. TILTON
By Counsel

Ryan M. Schmalzle, VSB No. 77295
SG Law PLC
102 North King Street
Leesburg, Virginia 20176
Telephone: (571) 977-2345
Facsimile:  (571) 977-2363
Counsel for the Plaintiff
ryan@sglawplc.com

A COPY-TESTE
Gary M. Clemens, Clerk
By_____
Deputy Clerk

5

Uploaded: 2025JAN28 11:29 Filed By:MHOUCK on behalf of Bar# 77295 RSCHMALZLE Reference: EF-163431
eFiled: 2025JAN28 LOUDOUN CC ANGELA WALSH at 2025JAN28 15:12 CL25000611-00

VIRGINIA:

## IN THE CIRCUIT COURT OF LOUDOUN COUNTY

| | |
|---|---|
| COLLEEN M. MCCOY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. |
| MARK SHASTI, MD | ) |
| | ) |
| and | ) |
| | ) |
| INOVA HEALTH CARE SERVICES. | ) |
| Registered Agent: | ) |
| CT Corporation System | ) |
| 4701 Cox Road, Suite 285 | ) |
| Glen Allen, VA 23060 | ) |
| | ) |
| Both Via Private Process Service | ) |
| | ) TRIAL BY JURY DEMANDED |
| Defendants. | ) |
| | ) |

## COMPLAINT

COMES NOW, Colleen M. McCoy ("Ms. McCoy"), by counsel, and moves this Honorable Court for a Judgment and Award of Execution against the defendants, Mark Shasti, MD and Inova Health Care Services, jointly and severally, in the sum of THREE MILLION DOLLARS ($3,000,000.00), plus pre-judgment interest and post-judgment interest for the following reasons, to-wit:

## THE PARTIES

1.    Ms. McCoy, at all times, relevant to this action was a resident of Loudoun County, Virginia.

2.    Upon information and belief, Dr. Shasti is and was, at all times relevant to this action, a resident of Loudoun County, Virginia.

3.      Inova Health Care Services ("Inova") is a Virginia professional corporation with its principal place of business in Fairfax County, Virginia.

4.      Upon information and belief, Dr. Shasti is and was, at all times relevant to this action, employed by Inova.

5.      The events that give rise to this cause of action occurred in Loudoun County, Virginia.

### COUNT I – MEDICAL MALPRACTICE (Surgery)

6.      The allegations of paragraphs 1 through 5 are reasserted as if fully set forth herein.

7.      In June of 2021 Collen began having pain in her left leg from her knee to her ankle.

8.      She consulted with specialists and explored nonsurgical treatment first.

9.      On November 23, 2022, Ms. McCoy consulted with Dr. Shasti.

10.     At the time Ms. McCoy saw Dr. Shasti, her pain has spread to her right leg and lower back.

11.     Dr. Shasti explained to Ms. McCoy that back surgery was necessary and advised extensive surgery.

12.     Dr. Shasti advised Ms. McCoy that if she did not opt for extensive surgery, a second surgery would likely be required.

13.     Dr. Shasti did not specifically advise Ms. McCoy of any issues that may arise from the surgery or through the healing process.

14.     Dr. Shasi and Ms. McCoy scheduled surgery for January 30, 2023 and Dr. Shasti performed back surgery on that date.

15.     During the surgery, Ms. McCoy suffered an L5 fracture.

16.     Dr. Shasti never informed Ms. McCoy that she had suffered an L5 fracture.

2

17.     Ms. McCoy experienced pain and foot weakness and numbness post-surgery because of the fracture.

18.     Dr. Shasti never treated Ms. McCoy for the fracture.

19.     During the surgery, Ms. McCoy suffered a cerebrospinal fluid ("CSF") leak.

20.     Dr. Shasti never informed Ms. McCoy that she suffered a CSF leak.

21.     Dr. Shasti did not appropriately treat the CSF leak post-surgery.

22.     Dr. Shasti performed a surgery including the use of "Infuse", which is a spinal graft material that is placed between vertebrae to facilitate the growth of new bone to create a solid fusion.

23.     The use of Infuse is not FDA approved for cases like Ms. McCoy.

24.     The use of Infuse in cases like Ms. McCoy's is considered "off-label."

25.     Dr. Shasti writes in his notes that he informed Ms. McCoy that he was performing a surgery that was not FDA approved.

26.     Dr. Shasti, however, never gave any such information to Ms. McCoy.

27.     Dr. Shasti never explained the complications that can arise from the use of this non-FDA-approved procedure.

28.     Dr. Shasti visited Ms. McCoy after the surgery and informed her that he was happy with how everything went.

29.     Ms. McCoy immediately reported the numbness in her right foot to Dr. Shasti.

30.     In multiple visits after the surgery with Dr. Shasti, Ms. McCoy reported to Dr. Shasti that her right foot and foot and left leg and foot were numb and continued to get worse.

31.     The use of Infuse can lead to overgrowth of bone post-surgery.

32.     An overgrowth of bone did occur in Ms. McCoy's case which caused her severe pain and the deadening of the L5 nerve.

3

33.     Ms. McCoy was having trouble walking because of the numbness and reported the same to Dr. Shasti.

34.     In February 2024, Ms. McCoy met with Dr. Shasti and complained that she was experiencing numbness in both feet and that she was having pain where hardware was installed in her back during the surgery.

35.     On January 14, 2025, Ms. McCoy underwent corrective surgery with Dr. Michael Rosner at George Washington University Hospital.

36.     Dr. Rosner removed the hardware installed by Dr. Shasti, reduced the bone overgrowth caused by the Infuse, and worked on Ms. McCoy's L5 nerve in hopes of restoring feeling to both of Ms. McCoy's legs and feet.

37.     Dr. Shasti recommended and performed a treatment option that had high risks and was also very expensive.

38.     Dr. Shasti benefited financially in the short term greatly from the surgery and far more than he would have from other treatment options.

39.     Upon information and belief, Inova terminated Dr. Shasti's employment because he performed this surgery and other large surgeries that were not indicated by his patients' presentation.

40.     Ms. McCoy's consent to the surgery was not informed consent.

41.     Ms. McCoy is in daily pain.

42.     Ms. McCoy cannot lift more than 25 lbs

43.     Ms. McCoy cannot stand for prolonged periods of time.

44.     Ms. McCoy has had to miss extensive periods of work due to the initial surgery and the corrective surgery. Ms. McCoy could not perform all of her work functions following the initial

4

surgery which resulted in losing her designation of "Training Center Faculty" which in turn resulted in lost income.

45.     Plaintiff's counsel certifies, pursuant to Virginia Code Ann. § 8.01-20.1, that Ms. McCoy has obtained from an expert witness that Ms. McCoy reasonably believes would qualify as an expert witness pursuant to Subjection A of § 8.01-581.20 a written opinion signed by the expert that, based upon a reasonable understanding of the facts, Dr. Shasti deviated from the applicable standard of care and the deviation was the proximate cause of Ms. McCoy's injuries.  The expert's opinion was rendered with a reasonable degree of medical probability.

46.     Inova is vicariously liable for the medical malpractice/negligence of Dr. Shasti because Dr. Shasti was an employee of Inova acting within the scope of his employment when he committed the medical malpractice described above.

47.     Ms. McCoy claims damages against the Defendants, jointly and severally, in the amount of THREE MILLION DOLLARS ($3,000,000.00) for compensatory damages.

WHEREFORE, the Plaintiff prays that she be granted a judgment against the Defendants, Mark Shasti, MD and Inova Health Care Services jointly and severally, in the amount of THREE MILLION DOLLARS ($3,000,000.00) for compensatory damages and interest from the date of the cause of action, January 30, 2022, pursuant to Section 8.01-382 of the Code of Virginia, 1950, as amended, plus punitive damages in the amount of THREE HUNDRED AND FIFTY THOUSAND DOLLARS ($350,000), plus costs.

A trial by jury is demanded.

Respectfully Submitted,
**COLLEEN M. MCCOY**
**By Counsel**


Ryan M. Schmalzle, VSB No. 77295
SG Law PLC
102 North King Street
Leesburg, Virginia 20176
Telephone: (571) 977-2345
Facsimile: (571) 977-2363
Counsel for the Plaintiff
ryan@sglawplc.com


6

A COPY-TESTE
Gary M. Clemens, Clerk
By
Deputy Clerk

**VIRGINIA:**

**IN THE CIRCUIT COURT FOR LOUDOUN COUNTY**

MEGAN TINCHER

      Plaintiff,

v.

MARK SHASTI, MD
Serve at:
47818 Blockhouse Point Pl.
Sterling, VA 20165



Case No.

CL25-3050

## CIVIL COMPLAINT

COMES NOW the plaintiff by and through the undersigned counsel, and issues this Civil Complaint to the Defendant, and for her complaint, states as follows:

## JURISDICTION and VENUE

1.     Plaintiff is a natural person who currently resides in Loudoun County, Virginia

2.     Defendant, MARK SHASTI, MD ("Dr. Shasti") is a natural person who currently resides in Loudoun County, Virginia.

3.     This case arises out of facts and circumstances that occurred within Loudoun County, Virginia, and under a contract agreeing to venue in Loudoun County.

4.     In this suit, the plaintiff seeks damages in excess of $25,000.00 in the aggregate.

5.     Based upon the forgoing, jurisdiction and venue lie in the Circuit Court for Loudoun County, Virginia.

## FACTS COMMON TO ALL COUNTS

6.     Defendant is a board certified orthopedic surgeon who formerly provided medical treatment to Plaintiff, who was Dr. Shasti's patient and received medical treatment from him in and around the time of November, 2021.

1

7.     Incidents occurred during said treatment which resulted in Plaintiff's filing of a civil action in the Circuit Court for Loudoun County, Virginia, captioned Jane Doe v. Mark Shasti, M.D. Case No. CL-22-00056600 ("Lawsuit").

8.     The Lawsuit involved Plaintiff's allegations of assault and battery against Defendant while she was a patient under his care and included three counts and the following praying for relief:

A.  For Count I, Battery: $100,000.00, together with punitive damages in the amount of $300,000.00.
B.  For Count II, Assault: $50,000.00, together with punitive damages in the amount of $150,000.00.
C.  For Count III, Battery: $300,000.00, together with punitive damages in the amount of $300,000.00.

9.     On or about April 23, 2024, Plaintiff and Defendant entered into a signed Settlement Agreement resolving the Lawsuit (hereafter the "Settlement Agreement" or the "Agreement" attached as Exhibit "A").

10.    Under the terms of the Settlement Agreement, Defendant agreed to make three installment payments to Plaintiff in consideration for Plaintiff dismissing the prior case.

11.    The installment payments were to be $50,000.00 on or before April 20, 2024; then $25,000.00 on or before April 20, 2025; then $25,000.00 on or before April 20, 2026.

12.    Under the terms of the Settlement Agreement, in the event of default the entire amount then owing shall be accelerated and shall become due immediately.

13.    Under the terms of the Settlement Agreement, in the event of enforcement the Defendant is to pay any attorney fees, costs and expenses incurred by Plaintiff to enforce the Agreement.

2

14.     Under the terms of the Settlement Agreement, Defendant explicitly represented that he had the ability to pay his obligations under the agreement.

15.     Defendant made the first installment payment in the amount of $50,000.00.

16.     However, Defendant failed to make the second installment payment, due on or before April 20, 2025, despite repeated demands from Plaintiff and notice given of the acceleration clause and right to attorney's fees and costs if necessary for enforcement.

17.     Defendant now represents that he does not have the ability to timely make the payments as due under the agreement.

18.     Defendant either did not have the ability to make full payments or did not have the intention to make full payments.

19.     All other facts necessary to support each count are set forth therein, *Infra*

## COUNT I: BREACH OF CONTRACT

20.     The facts alleged in paragraphs 1 through 19 above are realleged and incorporated herein by reference as if each were set forth in its entirety, verbatim.

21.     The Settlement Agreement constitutes a valid and enforceable contract under Virginia law.

22.     Plaintiff has performed all obligations required of her under the contract.

23.     Defendant's failure to make the second installment payment constitutes a material breach of the contract.

24.     As a direct and proximate result of Defendant's breach, Plaintiff has suffered financial damages in the amount of $25,000.00 plus interest due from 4/21/2025, plus attorney fees for the necessity to file this suit to enforce the Agreement.

25.     As a direct and proximate result of Defendant's breach, Defendant is in default

3

and the acceleration clause requires Defendant to pay the entire amount then owing at the time of default, $50,000.00.

26.     Defendant has not paid this amount, and Plaintiff has therefore suffered financial damages in the amount of $50,000.00, plus interest due from 4/21/2025 as a direct and proximate result of Defendant's breach.

27.     Under the terms of the Settlement Agreement, in the event of enforcement the Defendant is to pay any attorney fees, costs and expenses incurred by Plaintiff to enforce the Agreement.

WHEREFORE the plaintiff prays that this Court award her a judgment against the defendant for breach of contract and for the remedies set forth below in the prayer for relief.

## COUNT II:  FRAUD

28.     The facts alleged in paragraphs 1 through 27 above are realleged and incorporated herein by reference as if each were set forth in its entirety, verbatim.

29.     Defendant made false and fraudulent representations to Plaintiff, including but not limited to representing his ability to make payments while intending not to do so.

30.     Defendant made false and fraudulent representations to Plaintiff, including but not limited to promising to make payments while intending not to do so.

31.     Defendant knew or should have known that his representations were false at the time they were made.

32.     Defendant knowingly and fraudulently misrepresented his ability to make full payment and full installment payments as scheduled and required under the Agreement, inducing Plaintiff to dismiss her prior claim and avoiding his potential liability and judgment for greater sums due against him.

4

33.    Defendant knowingly and fraudulently misrepresented his intentions to make full payment and full installment payments as scheduled and required under the Agreement, inducing Plaintiff to dismiss her prior claim and avoiding his potential liability and judgment for greater sums due against him.

34.    Plaintiff reasonably relied on Defendant's false representations to her detriment, dismissing the Lawsuit against Defendant.

35.    As a result of Defendant's fraudulent conduct, Plaintiff has suffered damages in the amount of $500,000.00, the amounts sued for in the prior Lawsuit.

36.    Because the defendant's actions constitute an intentional tort, the plaintiff is entitled to seek punitive damages against the defendant.

WHEREFORE the plaintiff prays that this Court award her a judgment against the defendant for fraud and for the remedies set forth below in the prayer for relief.

## AD DAMNUM

The plaintiff prays that this Court award her a judgment against the defendant in the following amounts:

A.    For Count I, Breach of Contract:  $50,000.00 in compensatory damages, together with interest at the judgment rate from 4/21/2025, and all reasonable costs of this action and attorneys' fees;

B.    For Count II, Fraud:  $500,000.00 in compensatory damages, together with punitive damages in the amount of $350,000.00, interest at the judgment rate from the date of judgment, and all reasonable costs of this action and attorneys' fees.

5

## JURY DEMAND

The plaintiff hereby demands a trial by jury on the merits of the case.

Respectfully submitted:
Meghan Tincher

By counsel:

Jeffrey Saradar, Esq., VSB No. 47378
James P. Magner, Esq., VSB No. 45599
Magner Law, PC
6 Wirt Street, NW, First Floor
Leesburg, VA 20176
T (540) 431-4400
F (703) 543-5788
jim@magnerlaw.com
*Counsel for the Plaintiff*

6

EXHIBIT - A

## Settlement Agreement and Mutual Release

This Settlement Agreement and Mutual Release (hereafter referred to as "**Agreement**") is entered into between Megan Tincher ("**Tincher**"), and Mark Shasti, M.D. ("**Shasti**"), in the second part, with all of the above persons and entities each in named capacity hereinafter collectively being referred to as "**Parties**."

### RECITALS

WHEREAS, Tincher was Dr. Shasti's patient who received medical treatment from him in and around the time of November, 2021; and

WHEREAS, the Parties became involved in a dispute regarding an incident that Tincher alleged to occur during said medical treatment (hereafter referred to as "**Dispute**"), which led to the filing of a certain civil action in the Circuit Court for Loudoun County, Virginia, captioned *Jane Doe v. Mark Shasti, M.D.* Case No. CL-22-00056600 ("**Lawsuit**"); and

WHEREAS, *Jane Doe* is the pseudonym for Tincher, used in the Lawsuit to protect privacy; and

WHEREAS, the Parties desire to forever and finally resolve any and all claims and disputes between them, including but not limited to any claims raised or which could have been raised in the Dispute or Lawsuit, on the material terms set forth below;

NOW, THEREFORE, in consideration of the mutual promises and undertakings herein contained, and for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties, intending to be legally bound, hereby covenant and agree as follows:

### AGREEMENT

1.      Recitals: The recitals set forth above are incorporated by reference as matters of contract and not mere recitals.

2.      Settlement Amount: Shasti agrees to pay to Tincher the sum of One Hundred Thousand Dollars ($100,000.00), payable as follows:

a) Fifty Thousand Dollars ($50,000.00) ("**First Payment**") on or before April 20, 2024.

b) Twenty-five Thousand Dollars ($25,000.00) ("**Second Payment**") on or before April 20, 2025.

c) Twenty-five Thousand Dollars ($25,000.00) ("**Third Payment**") on or before April 20, 2026.

3.      Default: Shasti will be deemed to be in default of this Agreement if: a) Shasti fails to make any of the payments due hereunder on or before the due date thereof, with no grace period; b) Shasti files for personal federal bankruptcy protection under any section of the federal

Page 1 of 4

bankruptcy code, regardless of whether the debt owed by Shasti to Tincher hereunder is subject to discharge in bankruptcy; c) Shasti becomes insolvent as defined as being unable top pay his current liabilities as they come due; Shasti declares, whether orally or in writing that he does not intend to make a payment due hereunder; Shasti transfers all or substantially all of his personal assets to another individual or entity such that it has the effect of placing the said assets out of reach of collection by Tincher, regardless of whether or not that was the intent of such transfer.

4.    Effect of Default: In the event of a default by Shasti, the entire amount then owing hereunder shall be accelerated and shall become due immediately. In addition to the foregoing, Tincher shall have any and all other rights and remedies available to her at law or equity in the enforcement of this Agreement and the election of a particular remedy or the election to take no action at all, shall not constitute a waiver of any rights or remedy to which she may be entitled.

5.    Mutual Release: Excepting the provisions, terms, agreements and obligations set forth under this Agreement, the Parties and any and all of their successors, assigns, heirs, executors, personal representatives, and agents hereby affirmatively release, remise, acquit, extinguish and forever discharge any and all claims, complaints, causes of action of any kind whatsoever, demands for relief, sums of money, agreements, contracts, obligations, debts or actions of any kind or nature, whether at law or in equity, that any of them now has or may have against the other and/or any of their successors, assigns heirs, executors, personal representatives, and agents, including, but not limited to any all claims or actions arising from or related to the Dispute and the Lawsuit, whether in tort, contract, legal, equitable, or any other theory, through the date of complete execution of this Agreement. This Mutual Release does not release or waive any right to enforce the terms and obligations of this Agreement.

6.    Confidentiality: Provided Shasti timely makes all Payments, the nature, terms, and existence of this Dispute and Agreement shall remain private and confidential. The Parties shall not disclose or discuss the nature, terms, and existence of this Dispute and Agreement except as necessary to: (1) enforce and comply with this Agreement; (2) comply with any legal or lawful process, order, or command, such as a subpoena or Order from a court of law; or (3) seek professional advice from any legal, financial, or tax advisor or representative. If there is any inquiry by any outside party regarding the Dispute or this Agreement, the Parties shall respond only "the Dispute was resolved."

7.    Non-Disparagement: Provided Shasti timely makes all Payments, Tincher and Shasti shall not publicly defame or disparage the other on or after the complete execution of this Agreement, neither in their individual capacity, nor through any entity in which they have any interest. This includes defaming or disparaging the other orally, in print and/or via the internet and social media websites, blogs or other postings or publication, including, but not limited to, Yelp, Google, Facebook, Twitter, Instagram, LinkedIn and other such sites. Further, neither Tincher nor Shasti shall request or encourage any third party to make derogatory or defamatory statements about the other.

8.    Dischargeability of obligations in bankruptcy: None of the financial duties and responsibilities of the parties to each other specified herein shall be dischargeable in bankruptcy, as each party has given bona fide consideration and relinquished claims for the same. If a party to this Agreement files for bankruptcy, the other party shall be entitled to attorney's fees and costs

Page 2 of 4

incurred in protecting his or her rights in this Agreement. Each party has the ability to pay any obligation which he or she has accepted under the terms of this Agreement. The party who has accepted such obligation can pay such obligation from income or property which is not reasonably necessary to be expended for the maintenance or support of him or her, or his or her dependent(s), and which income or property is not necessary for the payment of expenditures necessary for the continuation, preservation and operation of a business. Discharging any obligation or debt under this Agreement would result in a detriment to the non-obligated party that outweighs the benefit to the party requesting the discharge.

9.    No Admissions: The Parties acknowledge that this Agreement is a compromise of all disputed claims and that nothing in this Agreement constitutes or will be treated by any Party as an admission of liability or wrongdoing of any kind. Shasti denies all allegations of wrongdoing, and this Agreement is not an admission or finding that any claims asserted by Tincher against Shasti are, or would be, in any way meritorious.

10.    Capacity: Each person signing this Agreement represents, warrants, and covenants that she has the full right and authority to enter into this Agreement and does so willingly, freely, and voluntarily.

11.    Merger and Integration:    The terms of this Agreement constitute the entire understanding and agreement of the Parties with respect to the subject matter contained herein. There are no other agreements, representations, warranties or other understandings between or among the Parties with regard to the subject matter hereof which are not set forth in this Agreement. Any prior agreement or understanding is hereby merged and superseded by this Agreement except as may be expressly reserved herein.

12.    Drafting:    The Parties agree that this Agreement was mutually drafted and negotiated between them and shall not be construed against any party on the grounds that such party drafted this Agreement, but shall be construed as if all Parties jointly prepared it.    Any ambiguity shall not be interpreted against any one party.

13.    Costs:    Each Party shall bear its own costs and expenses with regard to all negotiations and activities relating to the subject of this Agreement, including all costs, expenses, and attorneys' fees incurred as a result of and relating to the Dispute and Lawsuit.

14.    Enforcement:    In the event of a breach of this Agreement by Shasti for failing to timely make all Payments, then Tincher shall be entitled to any attorney fees, costs and expenses incurred by Tincher to enforce this Agreement in addition to any amounts due under the Consent Judgment.    The parties agree that any action brought to enforce this Agreement shall be brought in a court of competent jurisdiction in Loudoun County, Virginia, and both parties waive any objection to venue or for forum non conveniens.

15.    Voluntary:    The Parties acknowledge and represent that they have read this Agreement and fully understand the terms of this Agreement, that they have had sufficient opportunity to review it, and that they have been given the opportunity to be advised and represented by their own counsel in connection with the negotiation and execution of this Agreement.

Page 3 of 4

16.    Construction: This Agreement is to be construed broadly to provide a release to the maximum extent permissible under applicable law, except as set forth above. Any provision found to be void or unenforceable shall be severed from this Agreement and shall not affect the validity or enforceability of any other provisions.

17.    Choice of Law: This Agreement will be governed exclusively by the laws of the Commonwealth of Virginia.

18.    Binding: All terms and conditions contained in this Agreement shall be binding and inure to the benefit of all the Parties hereto and their respective successors and assigns.

19.    Counterparts: This Agreement may be executed in counterparts, such that each duplicate and complete set of original signatures shall constitute one and the same original. The terms of this Agreement shall take effect only pursuant to its terms and upon complete execution in counterparts or otherwise.

NOTHING FURTHER

IN WITNESS WHEREOF, and intending to be legally bound, the Parties have executed the foregoing Settlement Agreement and Mutual Release, as reflected by their signatures below.

4/23/24
Date

Megan Tincher

4/17/24
Date

Mark Shasti, M.D.

A COPY TESTE
Gary M Clemens, Clerk
By _____
Deputy Clerk

Page 4 of 4

Uploaded: 2026MAY06 18:33 Filed By:Bar# 98648 HMURRAY Reference: EF-201289
eFiled: 2026MAY06 LOUDOUN CC ANGELA.WALSH at 2026MAY07 15:07 CL26003238-00

**VIRGINIA:**

## IN THE CIRCUIT COURT OF LOUDOUN COUNTY

|  |  |  |
|---|---|---|
| APRIL COATES | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. _____ |
| | ) | |
| NOVA SPINE CENTER, LLC, | ) | |
| | ) | **JURY TRIAL DEMAND** |
| SERVE: | ) | |
| Mark Shasti | ) | |
| 649 Deerfield Farm Court | ) | |
| Great Falls, VA 22066 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| MARK SHASTI, | ) | |
| | ) | |
| SERVE: | ) | |
| Mark Shasti | ) | |
| 649 Deerfield Farm Court | ) | |
| Great Falls, VA 22066 | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff April Coates ("Ms. Coates" or "Plaintiff"), by and through undersigned counsel, submits this Complaint against NOVA Spine Center, LLC. ("NOVA Spine") and Mark Shasti ("Dr. Shasti" or collectively, "Defendants") alleging as follows:

## NATURE OF ACTION

1. This action states claims against NOVA Spine for sex discrimination, the creation of a hostile work environment based on sex, and retaliation in violation of the Virginia Human

1

Rights Act, Va. Code § 2.2-3900, *et seq.* ("VHRA"). This action states additional claims against both NOVA Spine and Dr. Shasti for assault, battery, and false imprisonment Shasti in violation of Virginia common law.

## PARTIES AND JURISDICTION

2.     Plaintiff Ms. Coates is an adult resident of the Commonwealth of Virginia.

3.     Ms. Coates is a member of a protected class based on her sex (female).

4.     Defendant NOVA Spine is a Virginia corporation with a principal office address in Sterling, Virginia.

5.     NOVA Spine did business in Virginia during all times relevant to this Complaint.

6.     Ms. Coates was an "employee" and NOVA Spine her "employer" as defined in Va. Code § 40.1-2 and in Va. Code § 2-2.3905 for the relevant periods identified in this complaint.

7.     Dr. Mark Shasti ("Dr. Shasti") owns NOVA Spine and serves as its leading physician.

## VENUE AND JURISDICTION

8.     NOVA Spine is subject to personal jurisdiction of the Court because it regularly conducts business within Loudon County, Virginia.

9.     Venue is proper in this Court pursuant to Va. Code § 8.01-262 because NOVA Spine conducts substantial business activity within Loudoun County, Virginia.

## FACTUAL BACKGROUND

2

10. Dr. Shasti was first introduced to Ms. Coates when she worked as a surgical coordinator at the Orthopaedic & Spine Surgery Institute ("the Institute") in Landsdowne, Virginia.

11. In 2022, Dr. Shasti transitioned from a role at the Institute to a position within the Inova network of medical facilities.

12. Dr. Shasti actively recruited Ms. Coates to work with him at Inova and coordinated with Inova's human resources department to hire Ms. Coates into an open role in his department.

13. Upon information and belief, Inova terminated Dr. Shasti's employment on March 23, 2023.

14. Following his job loss, Dr. Shasti decided to open his own practice under the name NOVA Spine Center.

15. Dr. Shasti informed Ms. Coates of his desire to open his own practice and actively recruited her to work for him.

16. Ms. Coates agreed to work for Dr. Shasti in his new endeavor.

17. Ms. Coates took an active role in the establishment of his practice, including finding and securing the lease on the location of its first facility in Sterling, Virginia.

18. NOVA Spine opened its first office in June 2023 under Dr. Shasti's leadership.

19. Dr. Shasti served as Ms. Coates' direct supervisor and the sole surgeon at the practice.

20. As both Ms. Coates' supervisor and the owner of the practice, Dr. Shasti had complete control over Ms. Coates' employment and subsequent income.

21. Ms. Coates served as NOVA Spine's surgical coordinator and office manager.

3

22.    Under Ms. Coates' management, the practice doubled its business within the first year of operations.

23.    In light of her exemplary performance, Ms. Coates received a glowing performance review in September 2024.

*Dr. Shasti Sexually Harasses Ms. Coates*

24.    Dr. Shasti regularly subjected Ms. Coates to sexual harassment during her tenure at NOVA Spine.

25.    Dr. Shasti habitually sent sexually suggestive text messages on work-related threads with Ms. Coates and her coworkers.

26.    In one message where Dr. Shasti was reminded of an upcoming phone meeting, Dr. Shasti asked for a "quickie one now" and stated that five minutes was "long time for some," clearly referencing a desire for a sexual encounter. See screenshot of text message from Dr. Shasti, attached as Exhibit A.

27.    In another message to the team, Dr. Shasti referred to setting up a meeting as setting a time to "do a throuple," referencing a group sexual situation. See screenshot of text message from Dr. Shasti and responses attached as Exhibit B.

28.    Once while discussing a soft, flexible "stress reliever" shaped like spinal bones purchased by the office as promotional swag, Dr. Shasti texted an employee group thread that the office motto should be "squeeze it, it will harden" in a clear reference to manual sexual activity. See screenshot of text message from Dr. Shasti, attached as Exhibit C.

4

29. During a discussion regarding a new hire, Dr. Shasti suggested that a reference on her resume he did not understand was a "kama sutra thing" and then reflected on the sexual attractiveness of one of his employees. See text message from Dr. Shasti, attached as Exhibit D.

30. While Dr. Shasti clearly fostered an atmosphere charged to his predilection for heterosexual sex, he made it clear that he had no desire to serve gay customers at his practice. See text message from Dr. Shasti, attached as Exhibit E.

31. Dr. Shasti frequently initiated physical touch with Ms. Coates in a way that was unwelcome and unwanted by her.

32. Dr. Shasti invaded Ms. Coates' personal space and rubbed his body up against hers inappropriately when they passed in close quarters.

33. Dr. Shasti often "hugged" Ms. Coates closely and tightly in a way that made her uncomfortable.

34. On several occasions, Dr. Shasti attempted to kiss Ms. Coates on the mouth during these "hugs."

35. When. Dr. Shasti tried to kiss Ms. Coates, she turned her head so that he was forced to kiss her cheek instead of her mouth.

36. Dr. Shasti did not let go of his "hug" until he kissed Ms. Coates.

37. On July 17, 2024, Dr. Shasti came into the back office where Ms. Coates was working and pulled her into a tight "hug."

38. Dr. Shasti then asked Ms. Coates for a kiss on the lips.

39. Ms. Coates refused to kiss Dr. Shasti.

40. Ms. Coates feared that Dr. Shasti would terminate her employment due to her refusal to submit to his advances.

5

41.     As the sole income earner for her household, Ms. Coates knew that losing her job would result in economic precarity.

42.     Following this incident, Ms. Coates did her best to focus on her work and be agreeable so as to not further jeopardize her employment.

43.     On January 3, 2025, AJ Nicholson, a coworker of Ms. Coates, messaged Ms. Coates to discuss a patient who stated she was uncomfortable with Dr. Shasti because Dr. Shasti kissed the patient on the lips at her last appointment. *See* text messages between Ms. Coates and Ms. Nicholson, attached as Exhibit F.

44.     On January 8, 2025, Dr. Shasti asked Ms. Coates to meet him at a coffee shop to discuss potential improvements to the practice prior to reviewing the build-out of NOVA Spine's new Sterling office on Gentry Drive.

45.     During the meeting, Dr. Shasti stated he was not happy with the performance of the current office manager and that he wanted Ms. Coates's help in improving office performance.

46.     After the coffee shop meeting, Ms. Coates and Dr. Shasti completed their walk-through of the Sterling location.

47.     While Ms. Coates was in her car to leave the Sterling office, Dr. Shasti called her and chided her, saying "I didn't get my kiss tonight."

48.     Ms. Coates refused to kiss Dr. Shasti, replying "That won't be happening."

49.     Dr. Shasti asked Ms. Coates, "Why not?"

50.     Ms. Coates, still worried about losing her employment, was able to deescalate the conversation by talking about work instead of Dr. Shasti's romantic interest in her.

6

*Dr. Shasti Retaliates Against Ms. Coates*

51.     Dr. Shasti took retaliatory action against Ms. Coates following her refusal to kiss him.

52.     On January 12, 2025, Dr. Shasti proposed a new role for Ms. Coates in a commission-based marketing position.

53.     This role would have cut Ms. Coates' compensated hours, and thus her pay, in half.

54.     When Ms. Coates refused to accept the proposed pay cut, Dr. Shasti stopped scheduling Ms. Coates for any shifts.

55.     NOVA Spine subsequently locked Ms. Coates out of all of its electronic practice management systems.

56.     NOVA Spine's decision to constructively terminate Ms. Coates followed directly from her refusal to engage in sexual activity with Dr. Shasti.

57.     Ms. Coates exhausted her available administrative remedies.

   a.   On or about June 29, 2025, Ms. Coates timely filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC").

   b.   Ms. Coates' charge of discrimination was dually filed with the Virginia Attorney General's Office of Civil Rights on that same date.

   c.   The Virginia Attorney General's Office of Civil Rights issued Ms. Coates a Notice of Right to Sue in this matter on April 7, 2026.

   d.   Ms. Coates exhausted her administrative remedies as required by the Virginia Human Rights Act, Va. Code §2.2-3900 *et seq.*

7

e.  This matter is timely filed within ninety (90) days of Ms. Coates' receipt of her

Notice of Right to Sue as to NOVA Spine from the Virginia Attorney General's

Office of Civil Rights.

### COUNT I
### Sex-Based Discrimination
### In Violation of the Virginia Human Rights Act
### § 2.2-3900 *et seq.*
### *Against Defendant NOVA Spine Center, LLC*

58.  Plaintiff re-alleges and reasserts each and every allegation set forth in the

paragraphs above as if each were set forth herein.

59.  The Virginia Human Rights Act ("VHRA") prohibits an employer from

discriminating against an employee on the basis of sex. Va. Code § 2.2-3905.

60.  Ms. Coates is a member of a protected class based on her sex (female).

61.  NOVA Spine subjected Ms. Coates to unwelcome discrimination and harassment

based on her sex through the actions of its owner, Dr. Shasti.

62.  Dr. Shasti engaged in unwelcome and nonconsensual physical contact with Ms.

Coates, restrained her movement, and attempted to force Ms. Coates to kiss him on more than one

occasion.

63.  Dr. Shasti abused the authority attendant to his position and treated Ms. Coates in

a manner likely to humiliate her.

64.  His actions did in fact have this effect.

65.  Ms. Coates repeatedly rejected Dr. Shasti's sexual advances.

8

66.    Dr. Shasti's sex-based discrimination and harassment of Ms. Coates and Ms. Coates' rejection of his advances culminated in her demotion to a significantly lesser paying position and the termination of her employment with NOVA Spine.

67.    Following Dr. Shasti's harassment, Ms. Coates has been afraid to continue working in-person jobs at healthcare facilities due to fear of additional harassment.

68.    This fear has negatively impacted Ms. Coates future job prospects as well as robbed her of the professional satisfaction she experienced in providing patient care.

69.    As a direct and proximate result of Defendant's willful, knowing, and intentional discrimination against Ms. Coates, she has suffered emotional and mental distress, anguish, and indignation.

70.    As a direct and proximate result of NOVA Spine's acts and conduct, as alleged herein, Ms. Coates has suffered loss of earnings and related employment benefits.

71.    NOVA Spine acted with malice and with reckless indifference to Ms. Coates' protected rights so as to support an award of punitive damages.

## COUNT II
### Sex-Based Hostile Work Environment
### In Violation of the Virginia Human Rights Act
### § 2.2-3900 et seq.
### Against Defendant NOVA Spine Center, LLC

72.    Plaintiff re-alleges and reasserts each and every allegation set forth in the paragraphs above as if each were set forth herein.

73.    Ms. Coates is a member of a protected class based on her sex (female).

9

74.    NOVA Spine subjected Ms. Coates to sex-based discrimination sufficiently severe and pervasive as to alter the conditions of her employment and subject her to an abusive and intolerable work environment.

75.    Owner of NOVA Spine, Dr. Shasti, was responsible for the creation of the sex-based work environment alleged herein and had notice of the sex-based harassment and discrimination to which he subjected Ms. Coates.

76.    NOVA Spine's conduct, through Dr. Shasti, altered the terms and conditions of Ms. Coates's employment by creating a hostile work environment on account of her sex.

77.    Dr. Shasti's harassment of Ms. Coates and her rejection of his sexual advances culminated in her demotion to a significantly lesser-paying position as well as the termination of her employment with NOVA Spine.

78.    Following Dr. Shasti's harassment, Ms. Coates has been afraid to continue working in-person jobs at healthcare facilities due to fear of additional harassment.

79.    This fear has negatively impacted Ms. Coates future job prospects as well as robbed her of the professional satisfaction she experienced in providing patient care.

80.    As a direct and proximate result of NOVA Spine's discriminatory acts, Ms. Coates has suffered a loss of compensation and benefits related to her employment.

81.    Ms. Coates has suffered and will continue to suffer pecuniary loss, mental anguish, pain and suffering, and other non-pecuniary losses.

82.    NOVA Spine acted with malice and with reckless indifference to Ms. Coates' protected rights so as to support an award of punitive damages.

10

## COUNT III
### Retaliation
### In Violation of the Virginia Human Rights Act
### § 2.2-3900 *et seq.*
*Against Defendant NOVA Spine Center, LLC*

83.    Plaintiff re-alleges and reasserts each and every allegation set forth in the paragraphs above as if each were set forth herein.

84.    The Virginia Human Rights Act makes it unlawful for an employer to retaliate against any employee who opposes unlawful discriminatory behavior in the workplace.

85.    Ms. Coates engaged in protected activity when she refused Dr. Shasti's sexual advances.

86.    NOVA Spine retaliated against Ms. Coates for opposing Dr. Shasti's sexual harassment by terminating her employment.

87.    NOVA Spine proposed to cut Ms. Coates' pay in half just four (4) days after she refused to kiss Dr. Shasti.

88.    As a direct and proximate result of NOVA Spine's retaliatory acts, Ms. Coates has suffered a loss of compensation and benefits related to her employment.

89.    Ms. Coates has suffered and will continue to suffer pecuniary loss, mental anguish, pain and suffering, and other non-pecuniary losses.

90.    NOVA Spine acted with malice and with reckless indifference to Ms. Coates' protected rights so as to support an award of punitive damages.

11

## COUNT IV
### Battery
### In Violation of Virginia Common Law
### *Against Both Defendants*

91.    Plaintiff re-alleges and reasserts each and every allegation set forth in the paragraphs above as if each were set forth herein.

92.    Dr. Shasti touched Ms. Coates in a harmful and offensive manner on each and every occasion where he rubbed his body against hers, subjected her to prolonged physical contact by hugging her, and attempted to kiss her.

93.    Dr. Shasti did so unlawfully and without privilege or consent from Ms. Coates.

94.    NOVA Spine knew of Dr. Shasti's conduct. Dr. Shasti owned the company and is responsible for the battery complained of herein.

95.    NOVA Spine is vicariously and strictly liable pursuant to the doctrine of *respondeat superior* for Dr. Shasti's tortious actions.

96.    As a result of Dr. Shasti's battery, Ms. Coates has suffered financial loss, shame, humiliation, indignity, embarrassment, and significant emotional distress.

## COUNT V
### Assault
### In Violation of Virginia Common Law
### *Against Both Defendants*

97.    Plaintiff re-alleges and reasserts each and every allegation set forth in the paragraphs above as if each were set forth herein.

98.    Dr. Shasti's words and actions put Ms. Coates in fear of imminent harmful and offensive bodily contact on each and every occasion where he rubbed his body against hers, attempted to kiss her, requested that she kiss him, and subjected her to prolonged physical contact by hugging her.

12

99.   NOVA Spine knew of Dr. Shasti's conduct. Dr. Shasti owned the company and is responsible for the assault complained of herein.

100.   NOVA Spine is vicariously and strictly liable pursuant to the doctrine of *respondeat superior* for Dr. Shasti's tortious actions.

101.   As a result of Dr. Shasti's assault, Ms. Coates has suffered financial loss, shame, humiliation, indignity, embarrassment, and significant emotional distress.

## COUNT VI
### False Imprisonment
### In Violation of Virginia Common Law
*Against Both Defendants*

102.   Plaintiff re-alleges and reasserts each and every allegation set forth in the paragraphs above as if each were set forth herein.

103.   Dr. Shasti falsely imprisoned Ms. Coates by hugging her, thereby physically restraining her and refusing to let go until she allowed him to kiss her.

104.   Dr. Shasti did not have legal justification for restraining Ms. Coates' freedom of movement.

105.   Dr. Shasti restrained Ms. Coates' freedom of movement through physical force, threat of physical force, and resulting psychological duress.

106.   Dr. Shasti's use of physical force, combined with his use of fear and psychological duress to restrain Ms. Coates' freedom of movement, constituted false imprisonment.

107.   NOVA Spine knew of Dr. Shasti's conduct. Dr. Shasti owned the company and is responsible for the false imprisonment complained of herein.

108.   NOVA Spine is vicariously and strictly liable pursuant to the doctrine of *respondeat superior* for Dr. Shasti's tortious actions.

13

109.    As a result of Dr. Shasti's false imprisonment of Ms. Coates, Ms. Coates has suffered financial loss, shame, humiliation, indignity, embarrassment, and significant emotional distress.

## AD DAMNUM

WHEREFORE, Plaintiff April Coates requests that this Court enter judgment in her favor against Defendant NOVA Spine and Dr. Shasti and further:

1.   Award Plaintiff compensatory damages, including pain and suffering, lost wages, benefits, and other remuneration, in the amount of approximately $1,000,000.00; and in addition

2.   Award Plaintiff punitive damages in the amount of $350,000.00 with respect to each Count; and in addition

3.   Award Plaintiff reasonable attorneys' fees, interest, and costs of this action as may be permitted by law; and in addition

4.   Award Plaintiff such other and further relief as may be appropriate.

## JURY DEMAND

**PLAINTIFF APRIL COATES DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Dated:          May 6, 2026

Respectfully,
APRIL COATES

*Heather Murray*

Joshua Erlich, VA Bar No. 81298
Katherine Herrmann, VA Bar No. 83203
Heather Murray, VA Bar No. 98648
The Erlich Law Office, PLLC
1550 Wilson Blvd.
Suite 700
Arlington, VA  22209
Tel:    (703) 791-9087
Fax:    (703) 722-8114
Email: jerlich@erlichlawoffice.com
          kherrmann@erlichlawoffice.com
          hmurray@erlichlawoffice.com


*Counsel for Plaintiff April Coates*

A COPY-TESTE
Gary M. Clemens, Clerk
By_____
            Deputy Clerk

15