**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

**MARK SHASTI,**

***Plaintiff*,**

**v.** **Case No.: 1:26-cv-01363-ELH**

**MICHAEL ROSNER**

***Defendant*.**

**AMENDED COMPLAINT**

Plaintiff Dr. Mark Shasti ("*Dr. Shasti*"), by and through undersigned counsel, brings this action against Defendant Michael Rosner ("*Rosner*" or "*Defendant*") based on the facts that follow:

**Nature of the Action**

1. Dr. Shasti brings this defamation suit to address the proliferation of a false and defamatory rumor which has affected the economics of his surgical practice and limited his opportunity to assist patients presenting as complex spine surgical cases. Rosner defamed Dr. Shasti by falsely claiming that Dr. Shasti's former employer, Inova Health Care Services ("*Inova*"), terminated Dr. Shasti because he performed unnecessary spinal surgeries on his patients.

2. The defamatory statement is unequivocally false. Dr. Shasti was not terminated by Inova for performing contraindicated surgeries or for any other reason. Dr. Shasti files this suit to seek redress for the reputational damages he suffered and will continue to suffer because of Rosner's false statement.

**Parties, Jurisdiction, and Venue**

3. Dr. Shasti is an adult resident of Fairfax County, Virginia.

4. On information and belief, Michael Rosner is an adult resident of Carroll County, Maryland. Rosner resides at 227 Kings Drive, Westminster, Maryland 21157. On information and belief, Rosner is a physician practicing neurosurgery, including at George Washington University Hospital in Washington, D.C.

5. Diversity jurisdiction exists under 28 U.S.C. § 1332 because complete diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000.00.

6. This Court has personal jurisdiction over Defendant because he is domiciled in Maryland.

7. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Defendant resides in this District, and under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in this District.

**Statement of Facts**

8. All previous paragraphs of this Complaint are realleged and incorporated herein by reference.

9. Dr. Shasti is a board-certified physician who presently serves as the Director of Nova Spine Center. Dr. Shasti has fellowship training in advanced spine surgery intended to correct spinal pathologies, including cervical and lumbar degenerative diseases, adult and pediatric scoliosis, infection, trauma, and tumors. Dr. Shasti's specialty lies in spinal surgery featuring complex procedures, such as cervical disc arthroplasty and minimally invasive lumbar surgeries.

10. Since completing his fellowship in August 2019, Dr. Shasti has developed an excellent professional reputation for specialized expertise and diligence in performing advanced spinal surgeries. Dr. Shasti maintains patient health records which reflect the volume of his

surgical practice and the nature of the procedures he performs. This information is included in a larger data package for patient outcome tracking that is maintained by the institutions where Dr. Shasti has been extended privileges to perform surgery, including Inova and Nova Spine Center.

11. The volume of a surgeon's practice is one of several important indicators of the breadth and demand for their expertise and the currentness of their surgical skills; consequently, surgical practice volume is also an indicator used by prospective employers or partners in evaluating the market value of a surgeon's expertise. Positive trends in surgical volume generally represent growth trajectories for a surgeon's abilities and his or her market value to a hospital system or private practice. Negative volume trends are generally perceived as indicating negative career trajectories, regardless of a surgeon's reasons for reduced surgical volume.

12. A private surgical practice focused on complex spine cases is referral-driven: patients presenting complex spine pathologies reach a surgeon in private practice principally through referrals from other physicians, practices, and institutions. A surgeon's reputation among referring physicians and within the regional community of spine surgeons is accordingly the principal driver of complex-case volume for a private practice.

13. For the calendar years 2020, 2021, and 2022, Dr. Shasti consistently performed between 270-300 spinal surgeries per year. These figures reflected Dr. Shasti's dedication to a full-time surgical practice, the breadth of his surgical expertise, and the demand for his work based on his specialized education, training, and experience. Dr. Shasti's surgical volume was representative of a surgeon on pace to perform near the top of his or her field within a highly valued practice area. The market for Dr. Shasti's surgical expertise was strong in 2020 and grew over the next two years.

14. During the first three months of 2023, Dr. Shasti performed spinal surgeries at a rate which was consistent with his rate of surgery performed from 2020-2022.

15. On March 23, 2023, Inova advised Dr. Shasti that his contract was being terminated without cause and that his employment would end as of June 21, 2023. Soon thereafter, Dr. Shasti decided to launch a private medical practice focused on delivery of advanced spinal surgery to patients as of July 1, 2023. From July 2023 to December 2023, Dr. Shasti performed 74 surgical procedures, which represented an annualized pace of approximately 150 cases per year.

16. From January 2024 to December 2024, Dr. Shasti performed 171 surgical procedures, representing approximately a 15% increase over his annualized pace from the second half of 2023.

17. Dr. Shasti's 2023 transition from an institutional practice at Inova to a new private practice explains the one-time reduction in his surgical volume: a new private practice must build its own referral network. Consistent with that expectation, Dr. Shasti's volume grew approximately 15% from the second half of 2023 through 2024 as his referral network matured, and his volume should have continued to grow in 2025.

18. Dr. Shasti's surgical case volume for 2025 is set out in the table below:

| **2025 Surgical Volume** | | | |
|---|---|---|---|
| **Month** | **Unique Cases** | **Cumulative Cases** | **YTD Annualized Cases** |
| January | 12 | 12 | 144.0 |
| February | 10 | 22 | 132.0 |
| March | 15 | 37 | 148.0 |
| April | 9 | 46 | 138.0 |
| May | 16 | 62 | 148.8 |
| June | 15 | 77 | 154.0 |
| July | 7 | 84 | 144.0 |
| August | 11 | 95 | 142.5 |
| September | 15 | 110 | 146.7 |
| October | 6 | 116 | 139.2 |
| November | 9 | 125 | 136.4 |
| December | 23 | 148 | 148.0 |

19. The pace of Dr. Shasti's surgical volume has decreased since approximately February 2025, when he learned that a specious medical malpractice case had been filed against him.[1] Upon receiving the complaint filed in *Tilton v. Shasti* (the "*Tilton Complaint*"), Dr. Shasti learned that at least one other surgeon practicing in his field held the false belief that Inova had fired Dr. Shasti.[2] Dr. Shasti's discovery of this false rumor explained his observed decrease in surgical volume despite growing his skills and experience in advanced spinal surgeries since June 2023, when his employment ended with Inova. On information and belief, the February 2025 inflection in Dr. Shasti's surgical volume followed the period during which Rosner's false statement circulated within the community of physicians from whom Dr. Shasti receives referrals of complex spine cases.

20. The Tilton Complaint referenced the false rumor that Dr. Shasti was fired from Inova, but the pleading did not provide the rumor's source. Even after reading the Tilton Complaint, Dr. Shasti remained unaware of Rosner's role in publishing the defamatory statement during the early stages of the Tilton litigation.

21. From the time Dr. Shasti was served with the Tilton Complaint until April 25, 2025, his counsel diligently pursued the factual basis for the rumor contained in Paragraph 22 of the Tilton Complaint. As part of this process, Dr. Shasti's counsel issued discovery, met and conferred with Tilton's counsel seeking to resolve his deficient discovery responses, and moved to compel more fulsome answers concerning the factual support for the false claim about the reason and circumstances of Dr. Shasti's employment ending with Inova.

---

[1] *Tilton v. Shasti*, Case No. CL24-5694-00, Loudoun County Cir. Ct. (filed October 3, 2024).

[2] *See* Compl. in *Tilton v. Shasti*, ¶ 22 ("Upon information and belief, Inova terminated Dr. Shasti's employment because he performed [Tilton's] surgery and other large surgeries that were not indicated by his patients' presentation.").

22. Despite these sustained efforts, Tilton's counsel did not disclose the source of the false rumor until April 8, 2025. On that date, Dr. Shasti received Tilton's Second Supplemental Interrogatory Answers, which explained that Dr. MarieElaina Sumas, the certifying doctor in Tilton's Virginia medical malpractice case and a testifying expert,[3] had heard that Dr. Shasti had been terminated by Inova for reasons related to performing unindicated surgeries and that, when asked where she had heard this, she could not recall the source but believed it may have been Rosner. On that date, Dr. Shasti first learned of Rosner's role in the proliferation of the rumor.

23. Between March 1, 2023, and October 6, 2024, Rosner published to Dr. Sumas a false and defamatory statement of fact: that Inova had terminated Dr. Shasti because he performed unnecessary surgeries.

24. On information and belief, Rosner had a professional and financial interest in disparaging Dr. Shasti. On August 22, 2023, Rosner performed a subsequent surgery on David Tilton, a former patient of Dr. Shasti, at George Washington University Hospital, on a referral from Rosner's spouse, who is also a physician. Rosner thereby positioned himself as the surgeon who corrected Dr. Shasti's work, and he competes with Dr. Shasti in the same regional market for complex spine surgery.

25. On information and belief, Rosner made the statement to Dr. Sumas before any judicial proceeding concerning Dr. Shasti was pending, contemplated, or proposed, and not in connection with any judicial proceeding. Rosner did not make the statement in any capacity as a witness, consultant, or expert in any proceeding, and the statement served no function in any proceeding.

[3] *See* Va. Code § 8.01-20.1 (requiring a certifying expert at the time of serving a case relying on most theories of liability of medical malpractice).

26. Dr. Sumas's reported recollection — that she heard the statement but could not recall its source with certainty — is consistent with a statement made and repeated in informal, non-litigation settings among physicians, and inconsistent with a communication made to her in preparation for testimony, which a certifying expert would be expected to remember and document.

27. Under Maryland law, the statute of limitations for a defamation claim is one (1) year from the date the claim accrues.[4] "Accrual occurs either the day of publication, or, under the discovery rule, 'when the plaintiff in fact knew or should have known' of the statement."[5] The 'discovery rule' applies to defamation claims in Maryland.[6]

28. Dr. Shasti learned of Rosner's defamatory statement on April 8, 2025, and thus the claim accrued on that date. His suit is brought within one year of April 8, 2025, and is timely filed.

29. Rosner's statement to Dr. Sumas that Dr. Shasti was terminated for performing unindicated surgeries carries the false and defamatory implication that Dr. Shasti was terminated for cause. Dr. Shasti was not terminated for cause, and his correspondence with Inova relating to his employment ending confirms that fact. Inova's contemporaneous written correspondence concerning the end of Dr. Shasti's employment confirms that the termination was without cause.

30. Rosner published the defamatory statement with actual malice or, at a minimum, with negligence. Rosner had no personal knowledge of the reasons Dr. Shasti's employment with Inova ended, and, on information and belief, no person with knowledge of those reasons ever told Rosner that Dr. Shasti had been terminated for performing unnecessary or contraindicated

---

[4] Md. Code Ann., Cts. and Jud. Proc. § 5-105.
[5] *McClure v. Lovelace*, 214 Md. App. 716, 741 (2013), *quoting Poffenberger v. Risser*, 290 Md. 631, 636 (1981).
[6] *Sears, Roebuck and Co. v. Ulman*, 287 Md. 397 (1980).

surgeries. Rosner therefore knew the statement was false or published it with reckless disregard for whether it was true, and, at a minimum, lacked reasonable grounds to believe it was true.

31. Rosner's false statement damaged Dr. Shasti's reputation in and around Maryland and Virginia, and particularly among the small community of surgeons performing advanced spinal surgery in those states. As a result of Rosner's statement, Dr. Shasti's professional competence has been called into question, and his surgical case volume, particularly of advanced spinal cases, has markedly decreased.

32. The repetition of Rosner's statement was foreseeable. On information and belief, the statement circulated within the small regional community of physicians who treat and refer complex spine cases, reached at least one other surgeon practicing in Dr. Shasti's field, and was repeated to Tilton's counsel, who incorporated it into a publicly filed pleading.

33. Rosner's statement imputed to Dr. Shasti conduct which would affect him in the practice of his business or trade, and so was defamatory *per se*. An allegation that a surgeon performs medical procedures on patients which are not intended to benefit them reflects negatively on the surgeon's fitness to practice medicine, and would disqualify the surgeon from practicing medicine, if true.[7]

**COUNT I – Defamation**

34. All previous paragraphs of this Complaint are realleged and incorporated herein by reference.

35. Rosner's statement regarding the end of Dr. Shasti's employment with Inova was of and concerning Dr. Shasti; was defamatory per se; and was published with actual malice or, at a minimum, with negligence.

---

[7] *See Shapiro v. Massengill*, 105 Md. App. 743, 775 (1995), *quoting Leese v. Baltimore Co*., 64 Md. App. 442, 473-74 (1985).

36. Rosner knew the statement he published regarding Dr. Shasti was false or published it with reckless disregard for its truth. At a minimum, Rosner lacked reasonable grounds for believing the statement to be true and was negligent in failing to ascertain the facts before publishing it.

37. Rosner's false and defamatory statement created and made apparent to Rosner a substantial danger to Dr. Shasti's reputation and medical career.

**Damages and Prayer for Relief**

38. All previous paragraphs are realleged and incorporated by reference.

39. The defamatory statement sued upon is of and concerning Dr. Shasti.

40. Rosner's defamatory statement made apparent to him a substantial danger of injury to Dr. Shasti's reputation because the statement alleged a lack of integrity and conduct which would tend to injure Dr. Shasti in the performance of his profession or trade, which is advanced spinal surgery.

41. Rosner's defamatory statement would tend to so harm the reputation of Dr. Shasti as to lower Dr. Shasti in the estimation of the community or to deter third persons from associating or dealing with him.

42. As a direct and proximate result of Rosner's defamation of him, Dr. Shasti has suffered actual damages, including, but not limited to, impairment of reputation, diminished standing in the community, humiliation, injury and embarrassment, emotional distress, mental anguish, lost referrals, lost surgical case volume, lost business opportunities, and other damages.

43. Dr. Shasti is entitled to presumed damages because Rosner's false and defamatory statement was defamatory per se and was published with actual malice: it imputes to Dr. Shasti acts which would render him unfit to practice medicine.

**WHEREFORE**, Plaintiff moves this Court for the entry of judgment against Defendant in the following amounts:

(1) Punitive damages in an amount to be determined at trial;

(2) One Million, Five Hundred Thousand Dollars ($1,500,000.00) for presumed damages, compensatory damages, actual damages for harm and injury to reputation, and for all other damages alleged in this Complaint;

(3) Pre- and post-judgment interest; and

(4) such other and further relief as the Court deems just and appropriate.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable. Fed. R. Civ. P. 38(b).

**Respectfully submitted,**

**MARK SHASTI**

***By Counsel***

Jason W. Fernandez (Bar # 29069)
Greenberg & Bederman, LLC
1111 Bonifant Street
Silver Spring, Maryland 20910
Tel: (866) 589-8547
Fax: (240) 630-3553
jfernandez@gblawyers.com

*/s/ Evan D. Mayo*
Evan D. Mayo (admitted *pro hac vice*)
Mayo Law Group PLLC
425 Locust Avenue, Suite 201
Charlottesville, Virginia 22902
Telephone: (434) 951-2222
Facsimile: (434) 951-0666
evan@mayolawgroup.com

**CERTIFICATE**

I hereby certify that on August 19, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sends a notification of filing to all counsel of record.

*/s/ Evan D. Mayo*
Evan D. Mayo