**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

| | | |
|---|---|---|
| **MARK SHASTI,** | ) | Case No.: 1:26-cv-01363-ELH |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **MICHAEL ROSNER,** | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

**PLAINTIFF'S MEMORANDUM IN**
**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Plaintiff Dr. Mark Shasti ("*Dr. Shasti*") appears by counsel and submits this memorandum in opposition to Defendant Michael Rosner's Motion to Dismiss (the "*Motion*").[1]

Rosner is the surgeon who re-operated on David Tilton, a former patient of Dr. Shasti, in August 2023, on a referral from Rosner's own wife.[2] When Tilton later sued Dr. Shasti for malpractice, the certifying expert in that case, Dr. MarieElaina Sumas, reported that she had heard that Inova Health Care Services ("Inova") had terminated Dr. Shasti for performing unindicated surgeries, and that she believed the source of the statement may have been Rosner.[3] The statement was false. Inova terminated Dr. Shasti's contract without cause.[4] This action seeks redress for that falsehood, which spread through the small community of physicians who treat and refer complex spine cases and depressed the surgical volume of Dr. Shasti's practice.[5]

The Motion offers three reasons to end the case at the pleadings. None withstands scrutiny. The absolute litigation privilege protects participants in judicial proceedings; it does not reach a rumor passed doctor-to-doctor beginning in March 2023, more than a year before

---

[1] Motion to Dismiss (ECF No. 16).
[2] ECF No. 16-3 (Motion Ex. B) ("Ex. B") at 6, 27 (Tilton's discovery responses describing Rosner's August 22, 2023, revision surgery at George Washington University Hospital and the referral to Rosner).
[3] Ex. B at 30.
[4] Complaint ("Compl.") (ECF No. 1) at ¶¶ 14, 24.
[5] Compl. ¶¶ 1, 21, 25–27.

the proceeding Rosner invokes existed. The Complaint pleads publication directly and plausibly, and Rosner's effort to override those allegations with a discovery document misreads the very authority he cites. And the Complaint pleads concrete, measurable harm: a documented decline in surgical volume tied to the rumor's spread among the referring physicians on whom a private surgical practice depends.

As a matter of clarity, the Motion is directed at a "First Amended Complaint" that the Clerk designated as filed in error and that never became part of the record; the operative Complaint is textually identical to that document except for two clerical corrections.[6] Rosner's arguments accordingly apply to the operative Complaint with equal force, and Dr. Shasti answers them on that basis. This memorandum is filed protectively, together with Plaintiff's Status Report, which requests leave under Rule 6(b)(1)(B) for its filing.

## BACKGROUND

Dr. Shasti is a fellowship-trained spine surgeon whose practice concentrates in complex procedures. From 2020 through 2022, while at Inova, he performed between 270 and 300 spinal surgeries per year.[7] In March 2023, Inova advised him that his contract was being terminated without cause, and he opened a private practice that July. His volume grew as his referral network matured, increasing approximately fifteen percent into 2024.[8]

In February 2025, Dr. Shasti learned that Tilton had sued him and that the complaint in that case repeated a false rumor: that Inova had fired him for performing surgeries his patients did not need. Only on April 8, 2025, through Tilton's Second Supplemental Interrogatory Answers, did he learn of Rosner's role: Dr. Sumas, the certifying expert, reported that she had heard the termination rumor and believed its source may have been Rosner.[9]

---

[6] ECF No. 22 at 1; ECF Nos. 24, 26; ECF No. 3.
[7] Compl. ¶¶ 9–12.
[8] Compl. ¶¶ 14–16.
[9] Compl. ¶¶ 17–20; Ex. B at 30.

The Complaint alleges that Rosner published the false statement to Dr. Sumas between March 1, 2023, and October 6, 2024; that the statement carried the false and defamatory implication that Dr. Shasti was terminated for cause; and that no person with knowledge of the facts ever gave Rosner reliable information supporting it.[10]

## STANDARD OF REVIEW

A complaint survives Rule 12(b)(6) if it pleads factual content allowing the reasonable inference that the defendant is liable, with all reasonable inferences drawn in the plaintiff's favor.[11] Documents incorporated into or integral to a complaint may be considered, but their contents are credited over the allegations only where the plaintiff relies on the document's truth.[12] And an affirmative defense supports dismissal at the pleading stage only in the rare case where all facts necessary to the defense clearly appear on the face of the complaint.[13]

## ARGUMENT

### I. The Absolute Litigation Privilege Does Not Appear on the Face of the Complaint.

Maryland's absolute litigation privilege protects statements made by participants in judicial proceedings (parties, counsel, witnesses, and retained experts) in the course of, in preparation for, or preliminary to a proceeding that exists or is contemplated.[14] Each of Rosner's authorities fits that mold: *Odyniec* involved a medical expert's statement made during a statutory health-claims proceeding, and *Adams* involved an expert's report prepared for pending litigation. The privilege is an affirmative defense, and under *Goodman* the defense can support dismissal only if every fact needed to sustain it appears on the face of the Complaint.

---

[10] Compl. ¶¶ 21, 24–25.

[11] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

[12] *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166–67 (4th Cir. 2016).

[13] *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (*en banc*).

[14] *Odyniec v. Schneider*, 322 Md. 520, 527–28, 588 A.2d 786, 789–90 (1991); *Adams v. Peck*, 288 Md. 1, 3, 7–8, 415 A.2d 292, 293–94 (1980); *Norman v. Borison*, 418 Md. 630, 658–59, 17 A.3d 697, 714 (2011).

The face of the Complaint defeats the defense rather than establishing it. The Complaint alleges publication in a window opening March 1, 2023, more than 18 months before Tilton filed suit on October 3, 2024.[15] The Complaint further alleges that Rosner spoke as a physician repeating a rumor, not as a party, witness, or retained expert in any proceeding. Rosner's own exhibit identifies his clinical role during that period: he was Tilton's treating surgeon, performing the August 2023 revision surgery.[16] A rumor passed doctor-to-doctor by a treating physician is not litigation conduct, and nothing in the pleading connects his statement to any proceeding pending, contemplated, or proposed when it was made.

Rosner's argument rests on a sleight of hand. He observes that the statement "is explicitly set forth in a legal proceeding", which is Paragraph 22 of the *Tilton* complaint.[17] But the privilege attaches speaker-by-speaker and statement-by-statement. The *Tilton* pleading enjoys its own privilege for its own authors; its existence does not permit another doctor to reach back to immunize an earlier, out-of-court statement by a stranger to the case. Were it otherwise, any slander could be laundered into immunity by a later lawsuit featuring its repetition. At minimum, when Rosner spoke, to whom, and in what capacity are questions of fact that cannot be resolved on the pleadings; that alone requires denial under *Goodman*.

## II. The Complaint Plausibly Alleges Publication.

The Complaint alleges directly that Rosner published the false statement to Dr. Sumas. Rosner's response is that Tilton's Second Supplemental Interrogatory Answers, in which Dr. Sumas reported she "could not recall the source" but "believes that it may have been Dr. Rosner," override that allegation. His own authority forecloses the argument. Under *Goines*, a document's contents are credited over the complaint's allegations only where the plaintiff relies

---

[15] Compl. ¶ 21; *Tilton v. Shasti*, Case No. CL24-5694, Loudoun Cty. Cir. Ct. (filed Oct. 3, 2024); Compl. ¶ 17 n.1.

[16] Ex. B at 6, 27.

[17] ECF No. 16-1 at 3.

on the truth of the document; where a plaintiff references a report "to show how he learned of certain facts alleged in his complaint, he does not automatically adopt all of the factual conclusions contained in the report."[18] The Complaint uses the interrogatory answers in that precise way: to fix the date Dr. Shasti discovered his claim for purposes of the discovery rule.[19] The document supplies notice and timing; it is not the foundation of the publication allegation, and that reference cannot be deployed to erase it.

The recipient of the statement herself identified Rosner as the person she believes made it. The Complaint supplies the context that makes that identification plausible: Rosner's role as the surgeon who took over Tilton's care and revised Dr. Shasti's work; his position as a competitor in the same regional market for complex spine surgery; and his relationship with the expert certifying a malpractice case about that very surgery. Rule 8 demands plausibility, not certainty: "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable."[20] *Nemet*, by contrast, involved naked speculation without any factual enhancement.[21] Precisely what Dr. Sumas was told, when, and by whom is classic deposition territory; defamation plaintiffs suing non-media defendants routinely establish the particulars of publication in discovery. Defamation plaintiffs are not required to establish those facts on the face of an initial pleading.

### III. The Complaint Adequately Pleads Causation and Damages.

The Complaint pleads concrete, measurable harm, with surgical event figures to support those claimed money damages. Dr. Shasti sustained 270 to 300 surgeries annually at Inova; rebuilt a private practice that grew approximately fifteen percent into 2024; and then experienced a decline beginning in early 2025, contemporaneous with the rumor's spread.[22]

---

[18] *Goines*, 822 F.3d at 167.
[19] Compl. ¶¶ 20, 22–23.
[20] *Goines*, 822 F.3d at 167 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).
[21] *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255–56 (4th Cir. 2009).
[22] Compl. ¶¶ 12–17.

The Complaint also pleads the story for causation: complex spine surgery is a referral practice, the community of referring physicians and surgeons is small, and an allegation that a surgeon operates unnecessarily is uniquely disqualifying within it.[23] Rosner's argument that the decline is better explained by Dr. Shasti's departure from Inova is a jury argument about competing causes, not a pleading defect. The alleged growth through 2024 followed by the 2025 inflection is a factual dispute the Court should not resolve on a motion to dismiss.

Rosner's damages argument fares no better. Even on a negligence theory, Maryland permits recovery of actual damages in a *per se* case, and actual injury is not limited to out-of-pocket loss; a defamation plaintiff's damages include impairment of reputation, humiliation, and mental anguish.[24] Each of these is pleaded here, alongside the quantified loss of case volume. And the Complaint alleges more than negligence: Rosner either knew the statement was false or published it without any reasonable grounds, which, if proven, supports presumed damages.[25] Finally, the repetition of the statement was foreseeable: Rosner's decision to tell the certifying expert in a malpractice case against dr. Shasti foreseeably carried the sting into publicly filed pleadings, and an original publisher is answerable for reasonably foreseeable repetition.[26]

## IV. The Extraneous Lawsuits Are No Basis for Dismissal.

The Motion opens with a catalogue of other lawsuits filed against Dr. Shasti, attached as sixty-four pages of exhibits. Judicial notice of court records establishes that suits were filed; it does not make their allegations true, and the Court may not weigh unproven allegations from other cases against Dr. Shasti here.[27] None of the referenced matters bears on any element of

[23] Compl. ¶¶ 17, 26.
[24] *Hearst Corp. v. Hughes*, 297 Md. 112, 114, 121–22, 466 A.2d 486, 487, 491 (1983).
[25] Compl. ¶¶ 30, 37.
[26] *Shepard v. Nabb*, 84 Md. App. 687, 698–99, 581 A.2d 839, 844–45 (1990); Restatement (Second) of Torts § 576(c).
[27] *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015); *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015).

this claim: not on what Rosner said, not on its falsity, not on the harm it caused. The catalogue of allegations should be disregarded.

### V. In the Alternative, Any Deficiency Should Be Cured by Amendment, Not Dismissal with Prejudice.

Leave to amend should be freely given when justice so requires, and denial is warranted only for reasons such as undue delay, bad faith, futility, or prejudice.[28] None is present: the case is at its earliest stage, no scheduling order has been entered, and no discovery has been taken. Dr. Shasti has already tendered an Amended Complaint that pleads with additional particularity the capacity and timing of Rosner's statement, his motive and opportunity, and the causal path from the statement to the losses claimed. Rosner's request that dismissal be entered with prejudice, before any discovery has occurred, should be denied in any event.

## CONCLUSION

The Court should deny the Motion. In the alternative, Dr. Shasti asks for leave to amend and acceptance of his previously filed Amended Complaint (ECF No. 26). Dr. Shasti is prepared to submit on the papers, and will appear for argument if the Court determines a hearing would be helpful.

[28] *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Dated: August 25, 2026

Respectfully submitted,

**MARK SHASTI**

*By Counsel*

*<u>/s/ Evan D. Mayo</u>*
Evan D. Mayo (*admitted pro hac vice*)
Payal C. Sampat (*admitted pro hac vice*)
MAYO LAW GROUP PLLC
425 Locust Avenue, Suite 201
Charlottesville, Virginia 22902
Telephone: 434.951.2222
Facsimile: 434.951.0666
evan@mayolawgroup.com
payal@mayolawgroup.com

Jason W. Fernandez (Bar # 29069)
Greenberg & Bederman, LLC
1111 Bonifant Street
Silver Spring, Maryland 20910
Tel: (866) 589-8547
Fax: (240) 630-3553
jfernandez@gblawyers.com

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I certify that on August 25, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Evan D. Mayo*
Evan D. Mayo