**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

| | | |
|---|---|---|
| **MARK SHASTI,** | ) | |
| *Plaintiff,* | ) | |
| v. | ) | Case No.: 1:26-cv-01363-ELH |
| **MICHAEL ROSNER,** | ) | |
| *Defendant.* | ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT**

Plaintiff Dr. Mark Shasti ("*Dr. Shasti*") submits this memorandum in opposition to Defendant Michael Rosner's Motion to Dismiss the Amended Complaint (the "*Motion*").[1]

The Amended Complaint alleges that Rosner, a neurosurgeon who re-operated on one of Dr. Shasti's former patients in August 2023, told Dr. MarieElaina Sumas that Inova Health Care Services ("*Inova*") had terminated Dr. Shasti for performing unnecessary surgeries.[2] The statement was false: Inova terminated Dr. Shasti's employment agreement without cause. Asked where she had heard the rumor, Dr. Sumas could not recall the source but believed it may have been Rosner, and the response named no one else.[3] The Amended Complaint thus identifies the speaker, the recipient, the substance of the statement, and the time period in which it was made. Rosner's arguments ask the Court to weigh Dr. Sumas's recollection, to compare and choose among possible causes of Dr. Shasti's losses, and to find facts about the context of a statement the pleadings do not describe. These requests exceed the limits of review under Rule 12(b)(6). The Motion should be denied.

---

[1] Motion to Dismiss (ECF No. 33); Memorandum of Law in Support ("Def.'s Mem.") (ECF No. 33-1).
[2] Amended Complaint ("Am. Compl.") (ECF No. 26) ¶ 1.
[3] Am. Compl. ¶¶ 1–2, 15, 22–24, 29; ECF No. 16-3 at 30.

**BACKGROUND**

Dr. Shasti is a fellowship-trained spine surgeon whose practice concentrates in complex procedures, which in private practice depend principally on physician referrals. He performed 270 to 300 surgeries a year at Inova from 2020 through 2022. In March 2023, Inova gave notice that it was terminating his employment agreement without cause, and he opened a private practice that July. He then performed 74 procedures in the second half of 2023, 171 in 2024, and 148 in 2025.[4]

Rosner is a neurosurgeon at George Washington University Hospital who, on information and belief, competes with Dr. Shasti for complex spine cases. On a referral from his spouse, Rosner assumed the care of David Tilton, a former patient of Dr. Shasti, and performed a revision surgery on him on August 22, 2023.[5] Tilton sued Dr. Shasti for malpractice on October 3, 2024, alleging "[u]pon information and belief," and without identifying any source, that Inova had terminated Dr. Shasti for performing unindicated surgeries. Upon receiving that complaint, Dr. Shasti learned that at least one other surgeon in his field held the false belief that Inova had fired him.[6] Virginia requires a malpractice plaintiff to obtain a certifying expert's written opinion before requesting service, and Tilton's certifying expert was Dr. Sumas.[7]

The source of the rumor was not disclosed until April 8, 2025, when Tilton's Second Supplemental Interrogatory Answers stated that Dr. Sumas had heard that Inova terminated Dr. Shasti for reasons related to performing unindicated surgeries and, when asked where she had heard this, could not recall the source but believed it may have been Rosner.[8] Tilton's counsel served those answers on Dr. Shasti's counsel that day by facsimile and first-class mail.[9] The

---

[4] Am. Compl. ¶¶ 9, 12–13, 15–18.
[5] Am. Compl. ¶¶ 4, 24; *see also* ECF No. 16-3 at 4, 7, 16.
[6] Am. Compl. ¶¶ 19–20 & nn.1–2.
[7] Va. Code Ann. § 8.01-20.1(A); Am. Compl. ¶ 22.
[8] Am. Compl. ¶¶ 21–22; ECF No. 16-3 at 30.
[9] ECF No. 16-3 at 30–31.

Amended Complaint alleges that Rosner published the statement between March 1, 2023 and October 6, 2024, before any proceeding concerning Dr. Shasti was pending or contemplated and not as a witness or expert, and that no one with knowledge of the reasons for Dr. Shasti's departure from Inova told Rosner that he was terminated for performing unnecessary surgeries.[10] Dr. Shasti filed suit on April 7, 2026.[11]

## STANDARD OF REVIEW

A complaint survives a motion under Rule 12(b)(6) if its factual allegations nudge the claim "across the line from conceivable to plausible."[12] A plaintiff must plead facts that "rule out 'obvious alternative explanation[s]' for the defendant's conduct," but need not "demonstrate that her right to relief is probable or that alternative explanations are less likely."[13] And an affirmative defense supports dismissal only where all facts necessary to it clearly appear on the face of the complaint.[14]

## ARGUMENT

### I. The Amended Complaint Plausibly Alleges That Rosner Published the Statement.

Rosner challenges publication on one ground: that Dr. Sumas's uncertainty about the source of the statement renders implausible the allegation that Rosner was the source.[15] A defamation plaintiff "need not plead detailed allegations as to each one of the who, what, where, and when," but "must provide more than vague and hazy allegations as to at least some of these

---

[10] Am. Compl. ¶¶ 23, 25, 30.

[11] Complaint (ECF No. 1).

[12] *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[13] *Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.*, No. 24-889, slip op. at 8 (U.S. June 4, 2026) (quoting *Twombly*, 550 U.S. at 567); *Houck*, 791 F.3d at 484.

[14] *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc).

[15] Def.'s Mem. 6–8.

questions."[16] In *Slade*, the counterclaimants alleged, on information and belief, only that State Farm told unidentified third parties at unspecified times that they were "engaging in fraud and dishonesty."[17] The Amended Complaint supplies what *Slade* lacked: the speaker, the recipient, the content, and a defined time period in which the statement was made.[18]

Rosner's complaint goes to the certainty of the witness, not the specificity of the pleading. The Amended Complaint accurately reports Dr. Sumas's account: she "could not recall the source but believed it may have been Rosner."[19] The Court may accept that account in full, because it does not contradict the allegation that Rosner published the statement. Dr. Sumas did not deny that Rosner was the source or name anyone else. The rule that an incorporated document prevails applies only where the document conflicts with the complaint, so the answers do not defeat the publication allegation.[20] The question is whether the Amended Complaint, read as a whole, makes publication plausible.

It does. Rosner assumed the care of Dr. Shasti's former patient and operated on him in August 2023; Tilton's malpractice action, in which Dr. Sumas was the certifying expert, concerns Dr. Shasti's surgery on that same patient; and, on information and belief, Rosner competes with Dr. Shasti for complex spine cases.[21] Those facts establish opportunity and a possible motive. They explain why the one person known to have heard the statement would associate it with Rosner, and they make Dr. Sumas's identification of Rosner—presented through Tilton's supplemental interrogatory answers—more than a guess. Together, they raise the inference of publication "above

---

[16] *State Farm Mut. Auto. Ins. Co. v. Slade Healthcare, Inc.*, 381 F. Supp. 3d 536, 568–69 (D. Md. 2019).
[17] *Id.*
[18] Am. Compl. ¶¶ 22–24.
[19] Am. Compl. ¶ 22; *see* ECF No. 16-3 at 30.
[20] *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166–67 (4th Cir. 2016); Def.'s Mem. 7.
[21] Am. Compl. ¶¶ 22, 24; ECF No. 16-3 at 4, 7, 16.

the speculative level."[22] A plaintiff "may initially plead parts of his case 'upon information and belief,'" so long as the allegations are not "wholly conclusory."[23] What Rosner said, to whom, and exactly when are facts within the knowledge of Rosner and Dr. Sumas, and the Amended Complaint pleads the facts available to Dr. Shasti with particularity.

## II. The Absolute Privilege Does Not Appear on the Face of the Amended Complaint.

Maryland's absolute privilege protects "judges, attorneys, parties and witnesses" for statements made "during the course of a judicial proceeding."[24] It reaches documents "prepared for use in connection with a pending judicial proceeding," and other out-of-court statements only if they were made to produce a proceeding, were prepared for use in a pending one, or are "connected contextually to a pending or ongoing proceeding."[25] A witness's out-of-court statement qualifies only if the speaker was "participating in the proceeding," and a proceeding not yet filed must be "actually contemplated in good faith and under serious consideration"; "[t]he bare possibility that [a] proceeding might be instituted is not to be used as a cloak to provide immunity for defamation."[26] Rosner's authorities fit that pattern: *Odyniec* protected a retained medical expert's statements to a party in a pending health-claims arbitration, and *Adams* protected a psychiatrist's report to counsel for a party in a pending divorce action.[27]

Because the privilege is an affirmative defense, the facts establishing it must clearly appear on the face of the Amended Complaint.[28] They do not. The Amended Complaint alleges that

---

[22] *Houck*, 791 F.3d at 484 (quoting *Twombly*, 550 U.S. at 555).
[23] *Kashdan v. George Mason Univ.*, 70 F.4th 694, 701 (4th Cir. 2023); *see Houck*, 791 F.3d at 485–86.
[24] *Adams v. Peck*, 288 Md. 1, 3, 415 A.2d 292, 293 (1980).
[25] *Odyniec v. Schneider*, 322 Md. 520, 527, 588 A.2d 786, 789 (1991); *Slade*, 381 F. Supp. 3d at 566–67 (citing *Norman v. Borison*, 418 Md. 630, 653, 17 A.3d 697, 710–11 (2011)).
[26] *Norman*, 418 Md. at 658, 17 A.3d at 713 (quoting Restatement (Second) of Torts § 588 cmt. e (1977)).
[27] *Odyniec*, 322 Md. at 523–24, 534, 588 A.2d at 787–88, 792-93; *Adams*, 288 Md. at 2–3, 8, 415 A.2d at 292-93, 295.
[28] *Goodman*, 494 F.3d at 464.

Rosner spoke before any proceeding concerning Dr. Shasti was pending, contemplated, or proposed, and not as a witness, consultant, or expert.[29] Nothing properly before the Court establishes when, where, or in what setting Rosner spoke to Dr. Sumas, whether any proceeding was then contemplated, or whether Rosner had any role in one. The only pleaded facts about Rosner's role describe him as Tilton's subsequent treating surgeon.[30] Rosner calls paragraph 25 conclusory because it is pleaded on information and belief,[31] but the circumstances of Rosner's statement are facts within his own knowledge, and the burden is his to establish the defense, not Dr. Shasti's to negate it. No presumption of absolute immunity applies.

Rosner next argues that because the pleaded period closes on October 6, 2024, three days after Tilton sued, the statement "may have been made exactly as the lawsuit was being prepared."[32] Rosner's argument is a possibility, not a fact appearing on the face of the complaint, and the bare possibility of a proceeding is what *Norman* holds insufficient. Even a statement made while a suit is pending is privileged only if the speaker was participating in it. No statement in the Amended Complaint claims Dr. Rosner was participating at the time the statement was made.

Finally, the allegation that the rumor was later repeated in the Tilton pleading concerns the foreseeable republication of Rosner's statement, for which he is answerable, not the publication sued upon.[33] Whatever privilege the Tilton pleading enjoys belongs to the participants in that proceeding. It does not reach back to an earlier, out-of-court statement by a person not alleged to have been a party, witness, or lawyer in the case. Otherwise, any later lawsuit that repeated a

---

[29] Am. Compl. ¶ 25.
[30] Am. Compl. ¶¶ 19 n.1, 24.
[31] Def.'s Mem. 12.
[32] Def.'s Mem. 12.
[33] Def.'s Mem. 11–12; Am. Compl. ¶ 32; *Shepard v. Nabb*, 84 Md. App. 687, 698–99, 581 A.2d 839, 844–45 (1990); Restatement (Second) of Torts § 576(c) (1977).

defamatory statement would immunize the statement itself. Rosner's argument overstates the reach of the judicial privilege in asking the Court to dismiss the Amended Complaint on this basis.

## III. The Face of the Amended Complaint Does Not Establish That the Claim Is Untimely.

Limitations, too, supports dismissal only if the defense clearly appears on the face of the complaint.[34] A defamation claim accrues on publication or, under the discovery rule, when the plaintiff "in fact knew or reasonably should have known" of the statement.[35] Knowledge may be implied through inquiry notice, which arises from circumstances that would cause a reasonable person "to undertake an investigation which, if pursued with reasonable diligence, would have led to knowledge of the alleged [tort]."[36] Once inquiry notice attaches, limitations is not postponed while the investigation proceeds, and knowledge of the defendant's identity is not required.[37] But the "questions of fact on which a limitations defense will turn" are for the finder of fact.[38]

The Amended Complaint pleads the accrual date and the fact that fixes it. Dr. Shasti first learned of Rosner's statement on April 8, 2025, when Tilton's Second Supplemental Interrogatory Answers disclosed it, and the certificate of service Rosner himself placed before the Court shows that those answers were served on Dr. Shasti's counsel by facsimile that day.[39] Dr. Shasti filed suit 364 days later. Rosner does not contend that the answers reached Dr. Shasti earlier. He contends instead that Dr. Shasti should have discovered the statement before February 2025, because

---

[34] *Goodman*, 494 F.3d at 464.

[35] *McClure v. Lovelace*, 214 Md. App. 716, 741, 78 A.3d 934 (2013) (citing *Poffenberger v. Risser*, 290 Md. 631, 636, 431 A.2d 677 (1981)); *see O'Reilly v. Tsottles*, No. GLR-18-3622, 2020 WL 1505681, at *10 (D. Md. Mar. 30, 2020).

[36] *Pennwalt Corp. v. Nasios*, 314 Md. 433, 448–49, 550 A.2d 1155 (1988) (quoting *O'Hara v. Kovens*, 305 Md. 280, 302, 503 A.2d 1313 (1986)) (alteration in original).

[37] *Id.* at 447–48; *Conaway v. State*, 90 Md. App. 234, 252–53, 600 A.2d 1133 (1992).

[38] *Pennwalt*, 314 Md. at 450 (quoting *O'Hara*, 305 Md. at 301).

[39] Am. Compl. ¶¶ 22, 28; ECF No. 16-3 at 30–31.

paragraph 19 alleges, on information and belief, that the 2025 decline in Dr. Shasti's volume followed the period during which the statement circulated among referring physicians. From that allegation Rosner infers that Dr. Shasti "would have heard the Statement and could have asked who made it."[40] But paragraph 19 does not allege that any referring physician repeated the statement to Dr. Shasti, and the inference that one did is improperly drawn against the plaintiff.

The only knowledge the Amended Complaint attributes to Dr. Shasti before April 8, 2025, came from the Tilton complaint itself: that at least one other surgeon in his field held the false belief.[41] Read with the rest of the pleading, that allegation locates the belief inside the Tilton litigation. Tilton's malpractice claim required a certifying expert's written opinion; his certifying expert was Dr. Sumas; Dr. Sumas reported the rumor to Tilton's counsel; and counsel incorporated it into the complaint "upon information and belief," without identifying any source.[42] Dr. Shasti does not contend that he was unaware of the rumor before April 8, 2025, or that his diligence suspended the limitations period. Dr. Shasti's position is that nothing he knew before that date disclosed a publication outside the litigation.

That knowledge was not notice of the statement sued upon. Every communication the Tilton complaint revealed or implied, from the expert's opinion to her report to counsel to counsel's pleading, occurred during the Tilton litigation, and none of them could support a defamation claim.[43] Nor did the Tilton record point anywhere else. Apart from the April 8, 2025, supplement, the only factual basis Tilton offered for the allegation was his own experience: he was told Dr. Shasti no longer worked at his office, and Inova's director of neurosurgery declined to

---

[40] Def.'s Mem. 13.

[41] Am. Compl. ¶ 19.

[42] Va. Code Ann. § 8.01-20.1(A); Am. Compl. ¶¶ 19–20 & n.2, 22, 32.

[43] *See Adams*, 288 Md. at 3, 8, 415 A.2d at 293, 295; *Odyniec*, 322 Md. at 527, 588 A.2d at 789.

continue seeing him.[44] The April 8, 2025, answers disclosed, for the first time, a statement outside that setting, made to Tilton's certifying expert by a physician not alleged to be a party, lawyer, or witness in the case.[45]

This distinction does not rest on the speaker's identity, which *Conaway* holds is not required for accrual. It rests on whether Dr. Shasti knew, or should have known, of an actionable statement at all. In *Conaway*, the plaintiff knew that he had been improperly treated and knew the identities of individual caregivers; what remained was to name the responsible entity.[46] In *O'Reilly*, the plaintiff knew that the defendant had accused him and sought to delay accrual until he learned "the substance and detail" of the defendant's words.[47] Neither addresses a plaintiff whose only knowledge was of privileged statements made in litigation, and who had no notice of any publication outside it.

Rosner's timeliness argument is not easily reconciled with his publication argument. When arguing publication, Rosner contends that the April 8, 2025 interrogatory answer, in which the only known recipient of the statement identified Rosner as its possible source, is too equivocal to support a plausible inference that he published it.[48] When arguing timeliness, Rosner contends that Dr. Shasti should have discovered that same publication more than a year before filing suit, from an allegation that an unattributed rumor circulated among other physicians.[49] If the recipient's own identification of Rosner were too uncertain to plead publication, a rumor attributed to no one could not have provided Dr. Shasti notice of it. The April 8, 2025, answer is the fact that makes Rosner's

---

[44] ECF No. 16-3 at 29–30.
[45] Am. Compl. ¶¶ 22–23, 25.
[46] *Conaway*, 90 Md. App. at 252–53 & n.6.
[47] *O'Reilly*, 2020 WL 1505681, at *10.
[48] Def.'s Mem. 6–8.
[49] Def.'s Mem. 13.

publication plausible, and it is also the first point at which Dr. Shasti knew or should have known of that publication. At a minimum, whether he knew or should have known of an actionable statement earlier is a fact-bound question the Amended Complaint does not resolve against him.[50]

**IV. The Amended Complaint Adequately Alleges Fault, Causation, and Damages.**

Maryland law ties each category of defamation damages to a distinct level of fault. Negligence supports a private-figure plaintiff's claim and the recovery of actual damages; presumed damages require knowledge of falsity or reckless disregard for the truth; and punitive damages require actual knowledge of falsity.[51] Dr. Shasti is a private figure, so actual malice is not an element of his claim. And actual damages are not limited to economic loss: a plaintiff who proves negligent defamation may recover for emotional distress, including humiliation and mental anguish, without proving any impairment of reputation.[52] The Amended Complaint alleges that Rosner's statement caused Dr. Shasti humiliation, emotional distress, and mental anguish, together with injury to his standing within the small community of complex-spine surgeons.[53] The claim therefore survives regardless of how the Court views the allegations of lost surgical volume.

Those allegations are also sufficient. The Amended Complaint pleads a mechanism: complex-spine volume in private practice depends on referrals, which depend on a surgeon's reputation among referring physicians. It separates the one-time decline that accompanied Dr. Shasti's move to private practice from what followed: growth from 74 procedures in the second half of 2023 to 171 in 2024, then a decline to 148 in 2025. And it alleges, on information and

---

[50] *See Pennwalt*, 314 Md. at 450–51.

[51] *Hearst Corp. v. Hughes*, 297 Md. 112, 114 & n.1, 120–22, 466 A.2d 486, 487 (1983); *Le Marc's Mgmt. Corp. v. Valentin*, 349 Md. 645, 653, 709 A.2d 1222 (1998); *Seley-Radtke v. Hosmane*, 450 Md. 468, 495–96, 149 A.3d 573 (2016).

[52] *Hearst*, 297 Md. at 114, 125–26, 466 A.2d at 487, 493.

[53] Am. Compl. ¶¶ 31, 33, 42.

belief, that the 2025 decline followed the period in which Rosner's statement circulated among referring physicians.[54] Those figures do not prove causation, but they make it plausible.

Rosner offers alternative explanations: Dr. Shasti's termination and the lawsuits filed against him.[55] The termination fits poorly with the pleaded facts, because Dr. Shasti's volume grew for more than a year after he left Inova. The litigation is a possible contributor, and the Court may notice that the suits were filed and when, but the Court may not accept their allegations as true, and noticed facts must be construed in the light most favorable to the plaintiff.[56] A possible alternative cause does not make the pleaded cause implausible. *Hikma* is not to the contrary. There, the Supreme Court held that statements a generic manufacturer was required by law, or expected by industry practice, to make could not support an inference of active inducement.[57] Rosner's alternatives, by contrast, do not explain his conduct at all: nothing about Dr. Shasti's termination or the suits against him explains a statement attributing that termination to unnecessary surgeries. They bear only on the extent of Dr. Shasti's economic loss, which is for the finder of fact. They are jury argument.

On actual malice, Rosner's pleading authorities involved a public figure and a public official, for whom actual malice is an element of liability.[58] Here, any deficiency would bear only on presumed and punitive damages. However, the allegations are sufficient. Paragraph 30 alleges that Rosner had no personal knowledge of why Inova ended Dr. Shasti's employment, that on information and belief no one with that knowledge told him Dr. Shasti was terminated for

---

[54] Am. Compl. ¶¶ 12, 15–19, 31.

[55] Def.'s Mem. 9 & n.5; ECF No. 33-2.

[56] *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015); *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508-09 (4th Cir. 2015).

[57] *Hikma*, slip op. at 10–11.

[58] *See Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 377–78 (4th Cir. 2012); *Harvey v. Cable News Network, Inc.*, 48 F.4th 257, 273–74 (4th Cir. 2022).

performing unnecessary surgeries, and that he nonetheless stated that reason as fact.[59] Rosner may have repeated something he heard. But a physician who asserts as fact that another surgeon was fired for performing unnecessary surgeries, without knowledge of the reasons and without information from anyone who has it, plausibly publishes with reckless disregard, which may be found where there are "obvious reasons to doubt the veracity of the informant or the accuracy of his reports."[60] Nothing more is required.

## V. The Request for Punitive Damages Is Properly Pleaded.

Rosner argues that the Amended Complaint "alleges exactly the opposite" of actual knowledge by alleging that Rosner lacked personal knowledge of the reasons for Dr. Shasti's termination.[61] But the Amended Complaint alleges that Rosner "knew the statement he published regarding Dr. Shasti was false," and knowledge may be alleged generally.[62] Lacking knowledge of the true reason for a termination is not inconsistent with knowing that the reason one asserts has no basis in fact. Dr. Shasti recognizes that knowing one lacks a basis is not the same as knowing a statement is false, and that *Le Marc's* requires the latter. Whether Rosner had that knowledge turns on what he was told and by whom, which facts are not yet available to Dr. Shasti. If the Court concludes that the pleaded facts support reckless disregard but not actual knowledge, the appropriate course is to strike the punitive damages request without prejudice, not to dismiss a claim that requires only negligence. But a lack of personal knowledge is not the same as no knowledge at all, and the Amended Complaint's allegation that Dr. Rosner knew the statement is false is consistent with his lack of personal knowledge.

---

[59] Am. Compl. ¶ 30.
[60] *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968).
[61] Def.'s Mem. 13–14.
[62] Am. Compl. ¶¶ 30, 36; Fed. R. Civ. P. 9(b).

## VI. Any Dismissal Should Be Without Prejudice.

Leave to amend should be freely given absent undue delay, bad faith, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice, or futility.[63] Dr. Shasti amended once, before any ruling on Rosner's first motion, which the Court denied as moot.[64] The Court has not previously identified a pleading deficiency, so there has been no repeated failure to cure one. If the Court should grant any part of the Motion, Dr. Shasti requests leave to amend his allegations based upon any pleading deficiency the Court identifies.

## CONCLUSION

The Court should deny the Motion. In the alternative, any dismissal should be without prejudice, and any deficiency found only in the allegations supporting presumed or punitive damages should be addressed by striking the corresponding request for relief rather than dismissing the claim.

[63] *Foman v. Davis*, 371 U.S. 178, 182 (1962).
[64] ECF No. 32.

Dated: September 22, 2026

Respectfully submitted,

**MARK SHASTI**

*By Counsel*

*<u>/s/ Evan D. Mayo</u>*
Evan D. Mayo (admitted *pro hac vice*)
Payal C. Sampat (admitted *pro hac vice*)
MAYO LAW GROUP PLLC
425 Locust Avenue, Suite 201
Charlottesville, Virginia 22902
Telephone: 434.951.2222
Facsimile: 434.951.0666
evan@mayolawgroup.com
payal@mayolawgroup.com

Jason W. Fernandez (Bar # 29069)
Greenberg & Bederman, LLC
1111 Bonifant Street
Silver Spring, Maryland 20910
Tel: (866) 589-8547
Fax: (240) 630-3553
jfernandez@gblawyers.com

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I certify that on September 22, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Evan D. Mayo*
Evan D. Mayo