**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

| | |
|---|---|
| **MARK SHASTI,**<br><br>Plaintiff,<br><br>**v.**<br><br>**MICHAEL ROSNER,**<br><br>Defendant. | Case No.: 1-26-cv-01363 |

**<u>REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS</u>**

Defendant Dr. Michael Rosner hereby submits this reply memorandum in response to Plaintiff's opposition ("Opposition" or "Opp.") (ECF No. 36) and in further support of his Motion to Dismiss ("Motion" or "Mot.") (ECF Nos. 33, 33-1) the Amended Complaint (ECF No. 26).

## PRELIMINARY STATEMENT

Plaintiff concedes that per his own Amended Complaint, the sole identified person to hear the purportedly defamatory Statement on which this suit is based, a medical expert for litigation, "could not recall" who made the Statement and stated only that it "may" have been Defendant. Faced with this hole at the center of his case, Plaintiff argues that this expressly pled concession "do[es] not defeat" his allegation elsewhere that Defendant made the Statement. But the allegation elsewhere is utterly conclusory, a mere splicing of party names into the legal elements.

Plaintiff also argues that the Court should not prematurely "weigh" the litigation expert's memory or draw inferences against Plaintiff, but Defendant asks nothing of the sort. Instead, Defendant asks the Court simply to take the allegation as true for pleading purposes: the expert could not recall who made the Statement. And while a court generally will draw reasonable

inferences for a plaintiff, the cases are clear that there remains a minimum baseline of factual pleading that is required, and that conclusory, speculative, or "vague and hazy" allegations pled in critical part on information and belief are insufficient.

Accordingly, while Plaintiff asks the Court to read his Amended Complaint "as a whole," including the speculative allegations he uses to pad his pleading, even that speculative tale, taken as a whole, is premised entirely on the assumption Defendant made the Statement to the litigation expert. Because Plaintiff instead alleges the expert was unsure, the suit collapses.

Addressing other grounds for dismissal, Plaintiff only further confirms he has no case. On timeliness, he concedes inquiry notice commencing Maryland's one-year limitations period does not require knowledge of a defendant's identity, only of circumstances sufficient to warrant investigation that would *lead to* discovery of a purported claim, *i.e.*, precisely what he alleges here: over a year before filing suit, he learned of a "rumor" regarding his termination, believed such "rumor" was the cause of lower surgical volume, and commenced the investigation leading to this suit. On absolute immunity for statements in connection with litigation, he argues in effect that his allegations regarding when and to whom the Statement was made are so vague and hazy that, combined with a paragraph speculating the Statement was made outside of litigation, he has plead around the doctrine. On damage causation, he rests on a newly pled "mechanism" of harm even more utterly speculative. And on punitive damages, he concedes such awards require actual knowledge of falsity, but argues incomprehensibly that his allegation Defendant "lack[ed] personal knowledge" about why Plaintiff was terminated is "consistent with" the allegation that Defendant "knew the statement [about why Plaintiff was terminated] is false."

Unsurprisingly, Plaintiff also requests leave to replead. Yet having been put on notice of these faults by Defendant's prior motion, Plaintiff already has amended, and in so doing, failed to

strengthen his claim. Indeed, he identifies no amendment he could make that would suffice to state a claim; to the contrary, he indicates a need for discovery.

This is precisely the kind of fishing expedition the Federal Rules do not permit. Where the sole identified witness is, by Plaintiff's own allegations, unsure who made the Statement, and Plaintiff attests to having no further information, moving forward is little better than harassment. The case should be dismissed with prejudice.

## ARGUMENT

### I. Plaintiff Fails to Plead that Defendant Made a Defamatory Statement to a Third Party

In the Motion, Defendant demonstrated that Plaintiff fails to adequately plead publication by Defendant, as (i) Plaintiff alleges the sole named witness to the Statement (a litigation expert) "could not recall" whether Defendant made the Statement, stating only that Defendant "may" have, and (ii) Plaintiff otherwise relies heavily on conclusory, speculative, and exceptionally vague allegations, pled in critical part on information and belief. *See* Mot. 6-8. In Opposition, Plaintiff concedes, as he must, the content of his expressly pled admission regarding the litigation expert's memory, *see* Opp. 4, but argues he has nevertheless pled enough. His arguments go nowhere.

***First***, Plaintiff argues that his allegation that the litigation expert could not recall who made the Statement at least "does not contradict" or "defeat" his allegations elsewhere that Defendant made the Statement. *See* Opp. 4 (citing AC ¶ 22); *see also* Opp.1 (citing AC ¶ 1). But those allegations elsewhere are wholly conclusory, *see* AC ¶¶ 1, 23, effectively a recitation of legal elements with party names added in, and thus do not satisfy the pleading standard. *See* Mot. 7-8. Thus, even if the allegation about the litigation expert's uncertainty as to who made the Statement did not "contradict" Plaintiff's conclusory allegations elsewhere (and it does), the fundamental problem would remain: nowhere in the Amended Complaint is there a clear, non-conclusory factual allegation that names a person who heard *Defendant* make the Statement.

***Second***, Plaintiff argues that the litigation expert at least did not "name anyone else" or affirmatively "deny" Defendant made the Statement. *See* Opp. 4. But that simply underscores what is pled, *i.e.*, the litigation expert "could not recall." AC ¶ 22. More fundamentally, such statements in the negative highlight what is missing: an *affirmative*, non-conclusory allegation that *Defendant* made the Statement.[1]

***Third***, Plaintiff argues that the Court should not "weigh" the litigation expert's memory at the motion to dismiss stage. *See* Opp. 1. But Defendant requests no weighing; Defendant asks that the allegation simply be taken as true for pleading purposes: the litigation expert "could not recall" who made the Statement, indicating only that it "may" have been Defendant. *See* Mot. 1-2, 7-8.

***Fourth***, Plaintiff argues that the Court should step back and take his allegations "as a whole," Opp. 4, but even taken as a whole, his story depends entirely on the assumption that the litigation expert heard Defendant make the Statement. Indeed, Plaintiff concedes this: in arguing his claim is timely under the discovery rule, he asserts that he could not have brought suit without an allegation that the litigation expert heard Defendant make the Statement. *See* Opp. 9-10 ("[t]he April 8, 2025 [interrogatory] answer [regarding the litigation expert's recollection as to who made the Statement] is the fact that makes [Defendant's] publication plausible"); *cf,* Part II, *infra* (timeliness argument unavailing). But because the current pleading, as amended after Plaintiff was confronted with a document contradicting his initial Complaint, *see* Mot. 7-8, instead alleges that the litigation expert could *not* recall who made the Statement and that it only "may" have been Defendant, the suit collapses.

[1] Plaintiff also cites a case concerning whether documents incorporated into a complaint (such as the interrogatory answer here, in which the litigation expert expresses uncertainty as to who made the Statement) defeat expressly pled allegations. *See* Opp. 4. But that principle is no longer relevant here: Defendant need not rely on the interrogatory answer, as Plaintiff now expressly alleges that the litigation expert was unsure who made the Statement. *See* AC ¶ 22.

While the Court need proceed no further, the "publication" pleading deficiencies go beyond this, as illustrated by Plaintiff's effort to evade this Court's ruling in *Slade*. There, the Court held that a defamation plaintiff "must provide more than vague and hazy allegations," and that providing "only a bare-bones rendering of what . . . supposedly [was] said" and omitting key details or relying on "information and belief" pleading for key facts is insufficient. *State Farm Mut. Auto. Ins. Co. v. Slade Healthcare, Inc.*, 381 F. Supp. 3d 536, 568-69 (D. Md. 2019) (Hollander, J.). Straining to distinguish *Slade*,[2] Plaintiff posits he has alleged "the speaker, the recipient, the content, and a defined time period in which the statement was made." Opp. at 4. In reality, (i) his allegations regarding the "speaker" are hopelessly equivocal (as discussed); (ii) the "content" of the Statement as alleged is, at most, "only a bare-bones rendering of what . . . supposedly [was] said," *see* AC ¶¶ 1, 19, 22, 23; (iii) Plaintiff's "defined time period" is not an actual date on which the Statement was made, but a 19-month period (which itself appears utterly speculative, *see* Mot. 8 n.4); (iv) no "recipient" is named, other than the litigation expert who was unsure who made the Statement, *see* Mot. 6-8; AC ¶¶ 22-23, 31-33; (v) there is no indication whether the Statement was written or oral, *see* AC ¶¶ 22-23; and (vi) many of the Amended Complaint's key allegations are conclusory, speculative, and pled on information and belief. *See* Mot. 5-6; 7-8, 9-12, 12-13.[3] From top to bottom, Plaintiff's pleading is deficient.

---

[2] *Slade* faithfully applies well-established legal standards. *See* Mot. 6-7 (citing cases applying federal pleading standards and Maryland defamation law). Indeed, Defendant cited two further decisions of this Court dismissing defamation claims where allegations were too conclusory, speculative, or overly reliant on information and belief pleading, *see* Mot. 7 (citing *Artis v. U.S. Foodservice, Inc.*, No. CIV.A. ELH-11-3406, 2012 WL 2126532, at *10 (D. Md. June 12, 2012) (Hollander, J.); *Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748, 758 (D. Md. 2015)), but Plaintiff does not address them.

[3] And precisely *because* many of Plaintiff's critical allegations are wholly conclusory, his protest that "[a] plaintiff may initially plead parts of his case 'upon information and belief,' so long as the allegations are not 'wholly conclusory," Opp. 5 & n.23 (citing *Kashdan v. George Mason Univ.*, 70 F.4th 694, 701 (4th Cir. 2023)), does not help him. Indeed, *Kashdan* affirms dismissal of "information and belief" pleadings that are conclusory and speculative. 70 F. 4th at 701-02.

II. Plaintiff's Suit Is Untimely

In the Motion, Defendant argued that Plaintiff's speculative allegation that the Statement was circulating among Plaintiff's referring-physician colleagues over a year before this suit was filed would, if credited, indicate Plaintiff was on inquiry notice early enough that Maryland's one-year limitations period for defamation claims had run before suit was filed on April 7, 2026. *See* Mot. 13. Plaintiff's response confirms his claim is untimely.

Plaintiff first concedes, as he must, that under Maryland's discovery rule, "knowledge of the defendant's identity is not required" for inquiry notice, Opp. 7, and that the limitations period commences once a plaintiff is on notice of "circumstances that would cause a reasonable person 'to undertake an investigation which, if pursued with reasonable diligence, would have led to knowledge of the alleged [tort].'" Opp. 7 (citing *Pennwalt Corp. v. Nasios*, 314 Md. 433, 448–49, 550 A.2d 1155, 1163-64 (1988)); *see also O'Reilly v. Tsottles*, No. CV GLR-18-3622, 2020 WL 1505681, at *10 (D. Md. Mar. 30, 2020) (defamation claim time-barred, as plaintiff need not be aware of "substance and detail" of allegedly defamatory statement), *aff'd*, No. 21-1194, 2023 WL 3172174 (4th Cir. May 1, 2023).

Plaintiff argues, however, that his allegation that the Statement was circulating among his referring physicians over a year before filing suit does not specifically allege that such physicians informed Plaintiff of the rumor, *see* Opp. 7-8,[4] and that other allegations in the Amended Complaint clarify what Plaintiff actually knew over a year before filing suit. *See* Opp. 8-9.

---

[4] Plaintiff's contention that Defendant's citation of purported circulation among referring physicians is "not easily reconciled" with Defendant's publication argument, Opp. 9, is wrong. Publication fails first and foremost because Plaintiff's sole identified witness is unsure who made the Statement. *See* Part I, *supra*; *see also* Mot. 14. Beyond that, while the "circulation" allegations fall short of pleading standards, the point is that, *if* credited, they would provide a basis for inquiry notice, because with reasonable diligence Plaintiff could have learned of the purported rumor given it was circulating among his referring physicians, AC ¶ 19, at the time he was receiving numerous monthly referrals, AC ¶ 18; moreover, Plaintiff alleges he separately knew of the rumor from the Tilton complaint, thus he could have asked his referring colleagues about it. But the Court need not reach this, because as discussed herein, Plaintiff concedes the rumor did cause him to start an investigation identifying his purported basis for suit.

But those other allegations only confirm Defendant's position. Plaintiff alleges that: (i) the "Tilton" malpractice complaint, which Plaintiff read, "referenced the false rumor that [Defendant] was fired from [his prior employer]," AC ¶ 20; (ii) Plaintiff learned from such complaint that "at least one other surgeon practicing in his field held the false belief that [Plaintiff's prior employer] had fired [Plaintiff]," AC ¶ 19; (iii) Plaintiff believed this "false rumor" explained "his observed decrease in surgical volume," AC ¶ 19; (iii) Plaintiff's review of the Tilton complaint (and thus his awareness of the rumor and purported cause for lost volume) occurred no later than "approximately February 2025," ¶ AC 19, and in any event over a year before filing suit, *see* Opp. 8 (citing Plaintiff's knowledge of "rumor" prior to April 8, 2025, coming "from the Tilton complaint itself," and conceding Plaintiff "does not contend that he was unaware of the rumor before April 8, 2025"); and (v) upon being served with the Tilton complaint, Plaintiff caused his counsel to commence the investigation that in April 2025 located the key purported facts he would allege in his suit, AC ¶¶ 21-22, 28.

Simply put, even aside from purported circulation among Plaintiff's referring physicians, Plaintiff learned of the "rumor" regarding his termination over a year before filing suit, formed at that time a belief that such "rumor" was causing his loss of surgical volume, and commenced the investigation that turned up the facts he would allege in his suit—yet chose to file that suit more than a year after learning of the "rumor," *i.e.*, too late.

And while Plaintiff argues the "rumor," so far as he was then aware, was circulating only *within* the Tilton litigation, such that any claim would be barred by Maryland's absolute immunity, *see* Opp. 8-9, that badly misapplies the discovery rule. As Plaintiff concedes, a plaintiff need not *begin* with notice of a viable claim, only notice of circumstances that *if diligently investigated* would lead to knowledge of a harm or tort. *See* Opp. 7 (inquiry notice runs on "circumstances that

would cause a reasonable person 'to undertake an investigation which, if pursued with reasonable diligence, would have led to knowledge of the alleged [tort]'"); *see also O'Reilly*, 2020 WL 1505681, at *10; *Adams v. Cont'l Ins. Co*., 233 Md. App. 1, 32, 161 A.3d 70, 88 (2017) ("[i]nquiry notice is triggered when the plaintiff recognizes, or reasonably should recognize, a harm—not when the plaintiff can successfully craft a legal argument and not when the plaintiff can draft an unassailable and comprehensive complaint"). Here, the "circumstance" triggering such notice is the "rumor" from the *Tilton* complaint, and Plaintiff alleges he diligently investigated such rumor and uncovered the purported basis for this suit. He simply filed too late.

III. Maryland's Absolute Immunity Doctrine Bars Plaintiff's Suit

In the Motion, Defendant demonstrated that Maryland's absolute immunity for statements made in connection with pending or contemplated litigation (defined broadly in the case law, to include certain statements with even a "contextual connection" to litigation) bars the claim, as Plaintiff alleges the Statement was published in connection with a malpractice suit. *See* Mot. 11-12. In his Opposition, Plaintiff argues in effect that his pleading of publication is so vague and threadbare that not enough appears on the face of the complaint to dismiss, and that in any event, he has alleged the Statement was first made outside of litigation. *See* Opp. 5-7. That response is both self-defeating and ineffective.

Most obviously, by arguing that the facts concerning Defendant purportedly making the Statement to the litigation expert are so sparsely pled, *see, e.g.,* Opp. 6 ("[n]othing properly before the Court establishes when, where, or in what setting [Defendant] spoke to [the litigation expert]"), Plaintiff only further underscores his own "vague and hazy" pleading of the publication element, itself a ground for dismissal. *See* Part I, *supra*.

In any event, Plaintiff alleges (albeit deficiently) that (i) the purported Statement was made to a litigation expert, AC ¶ 22; (ii) during a period culminating with the filing of litigation in which

such expert testified, AC ¶¶ 19 n.1, 23; (iii) the Statement was repeated in the litigation, *i.e.*, possible use became *actual* use, AC ¶ 32; and (iv) Plaintiff himself learned of the Statement through the litigation, AC ¶¶ 19-22.[5] And while Plaintiff contends he alleges Defendant "spoke before any proceeding concerning [Plaintiff] was pending, contemplated, or proposed," Opp. 6, the supporting allegation is a wild flight of speculation, on information and belief, relying on hypothetical musings that the litigation expert's lack of memory could be "consistent with" with a person hearing a comment outside a litigation context, on the theory that for litigation, an expert might be expected to have taken notes, *see* Mot. 12 (AC ¶¶ 25, 26). If the immunity could be so easily pled around, in precisely the type of suit Maryland has an important public policy interest in adjudicating, *see* Mot. 11-12, it would be toothless.

IV. Plaintiff Fails to Plead the Statement Caused Him Damages

In the Motion, Defendant demonstrated that (i) Plaintiff's damage-causation theory rests on factual allegations that are conclusory, speculative, and pled on information and belief; (ii) Plaintiff's *concrete* factual allegations, by contrast, plead an obvious alternative explanation for Plaintiff's reduced surgical volume, *i.e.*, he was terminated and repeatedly sued; and (iii) the "actual malice" allegation added after Plaintiff was confronted with this deficiency is utterly conclusory. *See* Mot. 9-10. Plaintiff's responses go nowhere.

[5] Plaintiff argues a "bare possibility" of a litigation is not enough for immunity to reach pre-suit statements. *See* Opp. 5, 6 (citing *Norman v. Borison*, 418 Md. 630, 653, 17 A.3d 697, 710-11 (2011)). But even aside from *Norman's* ruling that pre-suit statements for "possible use" in a proceeding can be protected, *Norman*, 418 Md. at 655, 17 A.3d at 711-12, here Plaintiff alleges (if deficiently) that possible use became *actual* use. AC ¶ 32. Further, Plaintiff's characterization of *Odyniec v. Schneider*, 322 Md. 520, 588 A.2d 786 (1991), and *Adams*, *see* Opp. 5, materially overlaps with his allegations here, namely, statements made to a litigation party or persons aligned with such party in the litigation. Finally, Plaintiff concedes the immunity can reach "out-of-court statements . . . *connected contextually* to a pending or ongoing proceeding," Opp. 5 (citing *Slade*, 381 F. Supp. 3d at 566 (citing *Norman*, 418 Md. at 653, 17 A.3d at 710-11) (emphasis added)), and *Norman* indicates the test for "during the course of a proceeding" is that the communication "had some general 'relevance,' relationship, or connection to that proceeding." *Norman*, 418 Md. at 658 n.17, 17 A.3d at 713.

***First***, while Plaintiff contends he now pleads a "mechanism" connecting the Statement to the harm, *see* Opp. 10-11, that pleading is illusory. As context, after Defendant in a prior motion pointed out that the initial Complaint's figures showing reduced surgical volume following Plaintiff's termination were unaccompanied by any factual allegation connecting those volumes to the Statement—*e.g.*, any allegation regarding a patient who declined treatment because of the Statement, a physician who ceased making referrals, a hospital credential affected, or a contract terminated—Plaintiff amended to add the "mechanism" he now trumpets, *i.e.*, that the purported circulation of the Statement among Plaintiff's community of surgeons led to fewer referrals than he might have hoped to receive. *See* AC ¶¶ 12, 19, 32. The obvious problem: these critical new allegations are one-sentence flights of rank speculation, each pled on information and belief, *see* AC ¶¶ 19, 32, which does not satisfy the pleading standard, *see* Mot. 7, 9-10.

***Second***, Plaintiff's argument that the Court should not weigh competing explanations or draw inferences against Plaintiff on the pleadings is misplaced. To be sure, the Motion highlighted that the few *concrete* facts concerning causation—Plaintiff was terminated, his surgical volume declined, he has been repeatedly sued for misconduct (which Plaintiff concedes the Court may take notice of, *see* Opp. 11)—suggest an "obvious alternative explanation," and courts sometimes find the presence of such factor to be an additional reason to dismiss thin and speculative pleadings. *See* Mot. 9-10.[6] But that is not a call to weigh competing inferences: the lesson, instead, is that by contrast to the *concrete* factual allegations indicating an obvious alternative explanation, Plaintiff's damage-causation "mechanism" allegations are "sheer speculation," *i.e.*, do not reach

[6] While Plaintiff acknowledges Supreme Court case law upholding the grant of motions to dismiss where "obvious alternative explanations" undermine a thinly pled cause of action, *see* Opp. 1, he seems to imply such law applies only to obvious alternative explanation for a defendant's conduct (rather than other elements of the cause of action), *see* Opp. 11 (arguing the alternative explanation "do[es] not explain [Defendant's] conduct"); yet he cites no cases holding the cases are so limited, and articulates no principle as to why such limitation would make sense.

even the minimum baseline of non-speculative facts required to permit the drawing of reasonable inferences in Plaintiff's favor. *See* Mot. 9-10.

***Third***, Plaintiff's defense of his new "actual malice" allegation (added in an attempt to sidestep the requirement to prove damage-causation, given the deficiencies just discussed, *see* Mot. 9-11) misses the point entirely. He states that an allegation that Defendant knew the Statement was false is sufficient for "reckless disregard," Opp. 11-12, but fails to engage on the problem identified by the Motion: the allegations are wholly conclusory and devoid of supporting non-conclusory factual allegations, despite case after case holding that actual malice may not be pled in conclusory fashion. *See* Mot. 10.

V. Plaintiff's Claim for Punitive Damages Should be Dismissed

In the Motion, Defendant demonstrated that punitive damages are unavailable under Maryland defamation law absent "actual knowledge" of falsity, yet Plaintiff pleads no facts supporting such a finding, and to the contrary, alleges Defendant *lacked* personal knowledge. *See* Mot. 13-14. In Opposition, aside from referencing an ineffective conclusory allegation that Defendant "knew the statement he published regarding [Plaintiff] was false," Plaintiff engages in a baffling attempt to create daylight between "personal knowledge" and "actual knowledge" of falsity, concluding, inexplicably: "the Amended Complaint's allegation that [Defendant] knew the statement is false is consistent with his lack of personal knowledge." Opp. 12. That is nonsense. If, as alleged, "[Defendant] had no personal knowledge of the reasons [Plaintiff's] employment with [his prior employer] ended," AC ¶ 30, then Defendant could not have "actual knowledge" of such reasons, nor "actual knowledge" that a purported Statement characterizing those reasons was false. The punitive damages claim must be dismissed.

VI. Plaintiff Should Not Be Granted Leave to Replead

Unsurprisingly in light of all the foregoing, Plaintiff in the alternative requests leave to replead, arguing the Court has not yet dismissed his complaint and he should have a chance to use any such opinion as guidance to amend. *See* Opp. 13. But Defendant by a prior motion already put Plaintiff on notice of most of the above-discussed deficiencies (ECF No. 16), Plaintiff thereafter was granted leave to file an Amended Complaint apparently intended to address them (ECF No. 32), and the result was an amended pleading that, as discussed in the Motion and this reply, is no stronger than the initial Complaint. *See* Mot. 3-6. Indeed, Plaintiff fails to identify any potential further amendment that could cure the pleading deficiencies—instead, he requests discovery. *See* Opp. 5 ("[w]hat [Defendant] said, to whom, and exactly when are facts within the knowledge of" persons other than Plaintiff), Opp. 12 (citing "facts . . . not yet available to [Plaintiff]"). But courts need not entertain futile amendments, *see Save Our Sound OBX, Inc. v. N.C. Dep't of Transp.*, 914 F.3d 213, 228 (4th Cir. 2019) (proposed amendment futile "if the claim it presents would not survive a motion to dismiss"), and in any event, Plaintiff has it exactly backwards. Discovery is available only if Plaintiff can plead a case. His multiple futile attempts show he cannot. The suit should be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons and those set forth in the Motion, Defendant respectfully requests that the Court dismiss this action with prejudice.

*[signature page follows]*

Respectfully submitted,

**MICHAEL ROSNER**

By his attorneys,

/s/ *Daniel J. Healy*______________
Daniel J. Healy (MD Bar 16314)
Stephen A. Best (admitted *pro hac vice*)
Brown Rudnick LLP
1900 N Street NW 4th Floor
Washington, D.C. 20036
Telephone: (202) 536-1700
Facsimile: (202) 536-1701
E-mail: dhealy@brownrudnick.com
E-mail: sbest@brownrudnick.com

**CERTIFICATE OF SERVICE**

I, Daniel J. Healy, hereby certify that on October 6, 2026, I caused the foregoing document to be electronically filed using the CM/ECF system, which will send a notification to all counsel of record.

*/s/ Daniel J. Healy* ______